ST. LOUIS TRUST CO. v. DES MOINES, N. & W. RY. CO. et al.

(Circuit Court, S. D. Iowa, C. D. May 18, 1900.)

RAILROADS—REORGANIZATION IN FRAUD OF CREDITORS.

The transfer of the property of a railroad company, through foreclosure proceedings, to a reorganized company, in accordance with an agreement between the principal stockholders and bondholders (who were for the most part the same persons and also the officers of the company), by which the new company was to issue its bonds to the old bondholders and its stock to the stockholders of the old company, cannot be made effective to relieve such property from the claims of general creditors of the old company, whose rights therein are superior to those of its stockholders, and such transfer will be set aside in equity, so far as necessary to protect the equitable rights of such creditors.

In Equity. Submitted on pleadings and proofs.

Baily, Ballereick & Preston, for complainant.

Cummins, Hewitt & Wright, for defendants.

SHIRAS, District Judge. From the record and evidence in this case it appears that in 1893 one Thomas J. Moss, then a resident of St. Louis, Mo., contracted to furnish to the Des Moines, Northern & Western Railway Company a certain number of railroad ties, and, the company having failed to pay the sum due for the ties furnished, a suit therefor was brought in this court in the name of the St. Louis Trust Company, as administrator of the estate of Thomas J. Moss, whose death occurred in August, 1893, and on the 8th day of June, 1896, a judgment in the sum of $2,839.10 was rendered against the railway company. It further appears that the Des Moines, Northern & Western Railway Company was organized under the laws of Iowa, on the 14th day of December, 1891, by the consolidation of two pre-existing companies, known as the Des Moines & Northern and Des Moines & Northwestern Railway Companies, and upon the completion of its organization it executed to the Metropolitan Trust Company of New York a trust deed upon the consolidated lines of railway to secure the payment of $2,770,000 of bonds issued by the grantor railway company. The deed thus executed contained a clause providing that, if default in the payment of the interest on the bonds should occur and continue for the period of six months, then a majority of the bondholders could demand a foreclosure of the mortgage or trust deed. Default in payment of the interest having occurred, a written request, under date of August 30, 1894, was made upon the trustee by a majority of the bondholders, asking that foreclosure proceedings be instituted, and for the purpose of controlling the proceedings an agreement in writing was entered into which, among other things, provided for the appointment of three of the bondholders who were to act as a purchasing committee; it being further provided that the committee should cause to be incorporated under the laws of the state of Iowa a railway corporation competent to own and operate the line of railway covered by the trust deed proposed to be foreclosed; that at the foreclosure sale the committee, on behalf of the bondholders, should bid upon the property, and, if the committee became the purchaser, then the title of the property so purchased should be vested in the newly-created corporation, it being further provided that the latter-named company should issue and deliver to the purchasing committee its coupon bonds in an amount sufficient to cover the total sum due to the bondholders secured by the trust deed about to be foreclosed, and also to cover all sums paid out by the committee in completing the foreclosure proceedings, and should also issue and deliver to the committee capital stock in an amount equal to 50 per cent. in excess of the bonds to be issued. It was further provided that, upon receiving the bonds and stock, the purchasing committee should sell sufficient of the bonds to cover the cash outlay incurred by the committee, the remainder of the bonds being distributed among the holders of the bonds secured by the mortgage about to be foreclosed, and the stock received by the committee should be distributed among and delivered to the stockholders of the Des Moines, Northern & Western Railway Company. Shortly after this agreement was entered into, and on the 22d day of October, 1894, a bill for the foreclosure of the trust deed was filed

in this court by the Metropolitan Trust Company, and an answer admitting the allegations of the bill was immediately filed on behalf of the railway company, and on the 7th day of November, 1894, being 16 days after the filing of the bill, a decree foreclosing the mortgage was entered, and on the 18th day of December, 1894, the mortgaged property was sold by the master in pursuance of the terms of the decree, and was bought in by the purchasing committee. It further appears that, at the time the proceedings for the foreclosure of the trust deed were instituted, the large majority of the bonds were owned by the president and other officers of the railway company, and who were at the same time the owners of nearly the whole of the capital stock, so that it is made to appear that the agreement providing for the reorganization of the railway, and in pursuance of which the decree of foreclosure was had, was an agreement entered into by parties who at the time were the principal officers of the debtor corporation, the principal owners of the mortgage bonds, and the principal owners of the capital stock of the corporation. Shortly after the confirmation of the master's sale of the mortgaged property, a corporation under the name of the Des Moines, Northern & Western Railway Company was organized under the laws of Iowa, and the purchasing committee conveyed to that company the property purchased at the master's sale, and the company executed and delivered to the committee bonds, in the sum of $2,915,000, secured by a trust deed to the Metropolitan Trust Company upon the purchased property, and also issued and delivered to the purchasing committee $4,372,500 of capital stock, which, in pursuance of the agreement heretofore recited, was by the committee distributed among the stockholders of the Des Moines, Northern & Western Railway Company. On the 2d of November, 1896, the bill in the present case was filed by the administrator of the estate of Thomas J. Moss, in which, after reciting at length the facts already stated, and averring that the judgment rendered against the railway company remains unpaid, and that execution thereon has been issued and returned unsatisfied, it is prayed that the transfer of the property of the Des Moines, Northern & Western Railway Company be declared of no effect as against the claim of complainant; that the judgment of June 8, 1896, be declared a lien on the property so transferred, subject only to the lien of the Metropolitan Trust Company as trustee under the deed of December 15, 1891; that a receiver of the property be appointed; and, if necessary, that a sale of the property be ordered. To this bill the Des Moines, Northern & Western Railway Company, the Des Moines, Northern & Western Railroad Company, the Metropolitan Trust Company, and the members of the purchasing committee are made parties defendant.

As already stated, the evidence shows that the proceedings for the foreclosure of the trust deed of December 15, 1891, were in the nature of an amicable suit, and were instituted and carried through under the provisions of the written agreement signed by the officers of the company and its principal bondholders and stockholders. If the foreclosure decree and the transfer based thereon are allowed to stand in full force, the result is that the property of the railway company

will be appropriated to the benefit of the bondholders and stockholders of that company, to the exclusion of the creditors of the company; and the question is whether, in equity, a transfer of this character can be maintained in favor of the stockholders as against creditors. The answer to this question is found in the opinion of the supreme court in Louisville Trust Co. v. Louisville, N. A. & C. R. Co., 174 U. S. 674, 683, 19 Sup. Ct. 830, 43 L. Ed. 1134, wherein it is said:

"Assuming that foreclosure proceedings may be carried on, to some extent at least, in the interests and for the benefit of both mortgagee and mortgagor (that is, bondholders and stockholders), we observe that no such proceedings can be rightfully carried to consummation which recognize and preserve an interest in the stockholders, without also recognizing and preserving the interests, not merely of the mortgagee, but of every creditor of the corporation. In other words, if the bondholder wishes to foreclose, and exclude inferior lienholders or general unsecured creditors and stockholders, he may do so; but a foreclosure which attempts to preserve any interest or right of the mortgagor in the property after the sale must necessarily secure and preserve the prior rights of general creditors thereof. This is based upon the familiar rule that the stockholders' interest in the property is subordinate to the rights of creditors,—first of secured, and then of unsecured, creditors,—and any arrangement of the parties by which the subordinate rights and interests of the stockholders are attempted to be secured at the expense of the prior rights of either class of creditors comes within judicial denunciation."

In the case now before the court it is clearly proven that by agreement between the bondholders and stockholders, and with the assent of the officers of the corporation, a decree of foreclosure was entered, and a sale thereunder was had, which protected the interests of the stockholders in the debtor corporation, without giving recognition or protection to the creditors, whose rights and equities are superior to those of the stockholders, and therefore a case is made for invoking equitable relief for the protection of the rights of the creditors. Railroad Co. v. Howard, 7 Wall. 392, 19 L. Ed. 117. The prayer of the bill is that the judgment of complainant be declared a lien upon the property transferred to the Des Moines, Northern & Western Railroad Company, subject only to the lien of the trust deed of December 15, 1891. The evidence shows that the subsequent and now-existing trust deed to the Metropolitan Trust Company covers bonds to an amount representing the face value of the prior issue of bonds, the accrued interest thereon, and the sum of $13,000; being the expenses of the foreclosure proceedings. It further appears that the last issue of bonds bears interest at 1 per cent. less rate than the bonds for which they were exchanged. It is therefore entirely probable that the amount of the lien held by the bondholders will be less under the second trust deed than it would be under the terms of the first, as the difference in interest will more than compensate for the sum added to cover the foreclosure expenses, and therefore the protection of the rights of the creditor as against the stockholders does not require an interference with the rights acquired by the bondholders through the foreclosure sale. The equities of the complainant will be sufficiently guarded by the entry of a decree declaring the judgment held by complainant to be an equitable lien upon the property formerly belonging to the Des Moines, Northern & Western

Railway Company and now held by the Des Moines, Northern & Western Railroad Company, subject to the lien created by the trust deed executed by the latter company; that if the judgment, interest, and costs are not paid to complainant by the 1st day of July, 1900, complainant may apply to the court for further relief looking to the enforcement of its rights in the premises; and that complainant recover judgment for the taxable costs of this proceeding against the defendant railroad company.