## No. 10,492.

### SHUCK, ET AL. *v.* QUACKENBUSH, ET AL.

Decided July 7, 1924.

Action to quiet title. Judgment for plaintiffs.

*Reversed.*

1. CREDITORS' BILL—*Judgment—Lien.* As a rule a general creditor may not maintain a suit in the nature of a creditor's bill unless he has reduced his claim to a judgment at law and caused it to become a specific lien on the debtor's interest in the property sought to be subjected to its payment.
   Exceptions to the general rule noted.

2. *No Judgment—Equity.* Where a debtor is a fugitive from justice and a nonresident of the state possessing only an equitable interest in the lands in controversy, it is held that a creditor's bill is maintainable without a previously recovered judgment àt law and the unavailing employment of process to enforce it.

3. *Lien.* The general rule is that the filing of a creditor's bill and service of process creates a lien on the equitable assets of the judgment debtor.

4. LIS PENDENS—*Effect.* In an action involving the title to real property the effect of filing a lis pendens is to prevent interference by third parties with the property during the pendency of the action.

5.     *Lien.*  In an action in the nature of a creditor's bill, the filing of a lis pendens created a lien which attached at the time the notice was filed.

6.     ATTACHMENT—*Effect.*  An attachment remains a continuing security for any judgment that may be obtained. It is an incumbrance from the time of its levy, and a subsequent judgment relates back to that levy.

7.     CREDITORS' BILL—*Levy—Effect.*  An equitable levy by a creditor's bill has the same virtue as a lien by attachment in that a subsequent judgment therein relates back to the time of the levy.

8.     LIS PENDENS—*Statute—Construction.*  Section 38 of the Colorado Code does not create lis pendens, it merely modifies and restricts the common law on that subject.

9.     *When Effective.*  The constructive notice afforded by the filing of a lis pendens takes effect the day it is filed, although publication of process in the action is not then complete.

10.     CREDITORS' BILL—*Attachment.*  In an action in the nature of a creditor's bill, failure of plaintiff to sue out a writ of attachment, held, under the facts disclosed, not to defeat his lien on the debtor's interest in the property acquired by the filing of his complaint and notice of lis pendens.

11.     JUDGMENTS—*In Personam—In Rem.*  Although a decree may purport or assume to be a personal liability against defendant, if in effect it is only a judgment in rem, it will not be invalid because of the irregularity.

12.     CREDITORS' BILL—*Process—Publication.*  Courts have power under publication of service in a creditor's bill, to ascertain the amount of the debt, and cause the same to be satisfied out of the property in the state which it has thereby drawn within its jurisdiction.

13.     LIENS—*Lis Pendens—Unrecorded Deed.*  An equitable lien acquired by the filing of a complaint and lis pendens in a creditor's bill, held superior to the title of the holder of an unrecorded deed to the property.

14.     JUDGMENTS—*Parties.*  As a general rule, persons not parties to an action are not bound by the judgment, but parties and their privies are.

15.     CREDITORS' BILL—*Judgment—Effect.*  A judgment under a creditor's bill subjecting debtor's interest in lands to plaintiff's

claim, held binding on purchasers from the debtor, although they were not parties to the suit, their deed being unrecorded at the time the action was instituted.

16. LIS PENDENS—*Purchasers Pendente Lite.* ' Purchasers of property subsequent to a creditor's lien acquired by the filing of a complaint and notice of lis pendens, held to take nothing by their purchase as against the creditor's final judgment.

*Error to the District Court of Larimer County, Hon. Neil F. Graham, Judge.*

Mr. PAUL W. LEE, Mr. GEORGE H. SHAW, for plaintiffs in error.

Mr. R. W. FLEMING, Mr. W. M. AULT, for defendants in error.

*Department Three.*

MR. JUSTICE CAMPBELL delivered the opinion of the court.

PLAINTIFFS Paul and Ralph Quackenbush brought this action in the district court of Larimer county against Samuel Shuck and B. W. Stewart to quiet title to lands situate in that county. As required by our practice in such cases, defendants in their answer set forth their title. The parties deraign title from the same grantor, Cora McIninch; the plaintiffs under a warranty deed direct from her, the defendants through a sheriff's deed, in pursuance of an execution sale authorized by decree of the same court in which was begun the present action, which decree in effect determined that the common grantor, Cora McIninch, one of the defendants there, held the property in trust for the use and benefit of her codefendant husband, and ordered a sale of the property to satisfy the creditors' demand.

Some interesting and important questions are involved, the principal ones being: (1) May a suit in the nature of a creditor's bill be maintained in the courts of this state without a previous judgment in the creditor's favor, and then only when the judgment has become a specific lien on the property affected, followed by the issuance of an exe-

cution and a return of *nulla bona?*   (2) If so, (a) may a decree therein be rendered upon service by publication, and (b) may a specific lien in the creditor's suit itself be created, and otherwise than by one or more of the three methods pointed out in *Robison v. Gumaer,* 43 Colo. 310, 95 Pac. 935.   (3) Is the equity or lien of a judgment creditor in such a creditor's suit superior to that of one who purchased the lands in question before, but whose deed of conveyance was recorded after, the beginning of the creditor's suit?   (4) Are plaintiffs here bound by the judgment in such creditor's suit?

The following and controlling facts are set forth in the answer and established by the evidence and are virtually admitted.   In October, 1916, a personal judgment in favor of Shuck, a defendant here, was rendered in a district court of Nebraska against David P. McIninch, the husband of Cora McIninch.   Personal service was had upon him. He had no property in Nebraska out of which this judgment could be satisfied.   After it was rendered he was charged with a criminal offense and with his wife left the state.   He is a fugitive from justice and their whereabouts are unknown.   While he was thus indebted, David bought 40 acres of land in Larimer county, Colorado, and a water right belonging thereto.   He paid the entire consideration therefor.   For the purpose of defrauding his creditors and especially Shuck, David caused title to this property to be taken in the name of Cora, his wife, and her deed was duly recorded.   The record title so continued for about one year and until March 26, 1917, on which day a warranty deed to the two Quackenbushes was executed by David and Cora jointly and placed on record.   It purported to be, and apparently was, executed and delivered August 26, 1916, about seven months before the date of its record.   The first time the defendants here knew or had reason to believe that these plaintiffs, grantees in the deed, had or claimed any interest in the land was on this day and was the result of the constructive notice of the record of the deed.   The only property rights of any kind David ever had in Colo-

rado, and out of which Shuck could satisfy his claim, was this equitable title or resulting trust attaching to the property thus conveyed by David and his wife to the plaintiffs. On January 26, 1917, about two months before the recording of the McIninch deed to the plaintiffs, Shuck, one of the defendants here, began in the district court of Larimer county, Colorado, a suit in the nature of a creditor's bill, docket No. 3621, against McIninch and his wife and other persons who had or claimed some interest in this property, the chief object of which was to subject the property to the satisfaction of his claim and demand, evidenced by the Nebraska judgment, which property it was alleged in the bill belonged in equity to David, Shuck's debtor. The principal defendants, David and Cora, being nonresidents of Colorado and having absconded and left this state, if they ever were here, could not be personally served with process. All the proper steps were taken to secure service by publication under our statutes relating thereto and such service was perfected as they provided. At the expiration of this substituted service, and when it became complete, David and Cora did not appear and their default was entered. Evidence was taken, the court made findings of fact in favor of the plaintiffs and against David and Cora, and upon the same a decree was entered that David and Cora were indebted to the plaintiff Shuck in the sum of more than $6,000, and the property in question was held by Cora as a resulting trust and was subject to the satisfaction of the debt thus ascertained. Sale of the property was ordered, which was afterwards executed and a certificate of sale was issued to Shuck and duly recorded, and, after the expiration of the period of redemption, the sheriff's deed to him was thereupon made and duly recorded. This decree not only found generally for the plaintiff but also recited specifically full compliance with all of the necessary and statutory steps that justify and authorize service by publication. The decree also specifically recites that on the day of filing the complaint in the creditor's suit, a notice of lis pendens, properly describing the property, was issued

and filed by plaintiff with the county recorder, which filing was made about two months before the deed of David and Cora to the Quackenbushes was recorded.

We entertain no doubt, if the district court of Larimer county in cause No. 3621, in which court the instant case also was brought, acquired jurisdiction of the subject matter of the former creditor's bill, as the result of substituted service, that the decree entered in the instant case, quieting title in the plaintiffs, is wrong. The judgment, quieting plaintiffs' title, now before us for review was rendered because, as stated by him, the presiding judge, the same judge who rendered the former decree in the creditor's suit, was of the opinion that the court there did not have jurisdiction of the res, and that the filing of the notice of lis pendens availed nothing and the judgment was void. There was, it is true, an issue tendered in the pleadings here that the plaintiffs in this action were in actual possession of the land at the time the creditor's suit was begun. If they were, the defendants here concede that they would be charged with knowledge of the plaintiffs' rights at the time the creditor's suit was begun, and, therefore, the equities of the plaintiffs here would be superior. But the trial court below did not find that plaintiffs were in possession at that time or that the defendants here had knowledge or notice thereof. If the court had made such finding it was not sustained by the evidence. So that the question of the possession by these plaintiffs of this property at the time of the institution of the creditor's suit is not here involved. Upon the record the decision here depends upon the validity or invalidity of the decree in the creditor's suit, and to the consideration of that question we now address ourselves.

1. In England and in the state courts of the Union the general rule, in the absence of a qualifying statute, is that a creditor's bill may not be maintained unless the creditor has theretofore reduced his claim to a judgment at law and the execution issued thereon has been returned nulla bona. In Colorado, except in the federal courts which are

not so exacting in such proceedings, a mere general creditor may not maintain a suit in the nature of a creditor's bill unless he has, in addition to the foregoing requirements, caused his previously rendered judgment to become a specific lien on the judgment debtor's interest in the real estate sought thereby to be subjected to its payment. *Robison v. Gumaer, supra,* and cases cited. The court, speaking by Mr. Justice Helm, said such a lien may be procured in at least three ways, viz.: "by levy of an execution thereon in the manner provided by law if, as in this case, the realty can be identified; by filing a transcript of his judgment in the office of the clerk and recorder of the county wherein the property is situate, and thus securing a statutory lien which binds all interest in realty then owned or afterwards acquired by the judgment debtor during the period of six years from entry of the judgment; or by attachment of realty before judgment and omission to merge the attachment lien through levy of execution or filing of the judgment transcript."

The learned judge did not in his opinion say, or intend to say, that the lien might not be procured by some method other than the three there enumerated. Indeed, he was careful to state in two different sentences of his opinion that there were, or might be, other methods. Such precautionary language was doubtless employed because the careful investigation of the law relating to creditor's bills which the opinion exhibits must have revealed to the writer, what the English and American cases from the very beginning expressly declare, that there are exceptions to the general rule which Judge Helm announced governed the case then under consideration. One of these exceptions which excuses a previous judgment and the utilization without avail of process to enforce it, is where it is impossible or impractical to recover in an action at law a personal judgment by the creditor against the debtor; as where the debtor is a nonresident, a fugitive from justice, has absconded and his whereabouts are unknown, or where he is insolvent, or some court has enjoined prosecution of ac-

tions against him. In such instances, one or more of which is presented by this record, and other exceptions might be noted, the courts say that as the general rule is based upon the doctrine that resort to equity is not permissible until the one seeking its aid has exhausted his legal remedies, it would be folly and a useless expense to refuse equitable relief because the one seeking it had failed to comply with an impossible or wholly useless condition precedent. We are not cited to any case in this jurisdiction that negatives the right of a plaintiff in a state of facts like those now before us to maintain a creditor's suit without a previous judgment and exhausting unavailingly process thereunder. Following the decided weight of authority, both of the federal and state courts, we hold that, since the debtor McIninch was a fugitive from justice, a nonresident of Colorado, and that the only property interest which he possessed was the equitable estate in the lands in controversy which are situate in Larimer county, cause No. 3621, the creditor's bill, was maintainable by the general contract creditor because the undisputed facts bring the case within an exception to the general rule, which exception makes unnecessary a previous recovery at law by the creditor and the unavailing employment of process to enforce it. Among the authorities so holding are: *Case v. Beauregard*, 101 U. S. 688, 690, 25 L. Ed. 1004; *Williams v. Adler-Goldmann Com. Co.*, 227 Fed. 374, 142 C. C. A. 70; *Scott v. M'Millen*, 1 Litt. (Ky.) 302, 13 Am. Dec. 239; *Overmire v. Haworth*, 48 Minn. 372, 51 N. W. 121, 31 Am. St. Rep. 660; *Skilton v. Codington*, 185 N. Y. 80, 77 N. E. 790, 113 Am. St. Rep. 885, where the court said that while the general rule requires a previous judgment, the rule is one of procedure and does not affect the right, and where recovery of a judgment is impracticable it is not an indispensable requisite to enforcing the rights of a general contract creditor. *Hanscom v. Hanscom*, 6 Colo. App. 97, 39 Pac. 885; *Livingston v. Swofford Bros.*, 12 Colo. App. 320, 56 Pac. 351; 15 C. J. p. 1390, where many cases are cited. It has also been held that the objection to nonrecovery of a

previous judgment is one personal to the defendant and may be waived by him by failing to interpose it at the trial, or where he suffers default. *Penn. Steel Co. v. New York City Railway Co.*, 157 Fed. 440; *In re Reisenberg*, 208 U. S. 90, 28 Sup. Ct. 219, 52 L. Ed. 403.

If defendant Shuck's former creditor's suit, the decree in which was pleaded in the answer in this case as a bar to plaintiffs' recovery, falls within a recognized exception to the general rule, and, therefore, a previous judgment is not necessary to its maintenance, it would seem logically to follow that the further requirement in this state announced in the Gumaer Case, that the previous judgment must also be made a specific lien upon the property as a condition precedent, may be dispensed with, because there is no judgment in existence that can be made to operate as a specific lien. But as counsel for the creditor here seem to concede that to uphold the decree in the former creditor's suit a specific lien was procured therein, we proceed to show from this record that such lien was acquired and that the lien attached as an incident to, and in pursuance of, that suit.

2. The filing of a bill in chancery and service of the subpoena is one recognized method of procuring a lien on equitable assets of a defendant debtor, whether the debt is evidenced by a simple contract or by a judgment. See cases already cited and *King v. Goodwin*, 130 Ill. 102, 22 N. E. 533, 17 Am. St. Rep. 277, where the court says: "The general rule is, that the filing of a creditor's bill, and service of process, creates a lien on the equitable assets of the judgment debtor. It has been aptly termed an 'equitable levy'." *Roberts v. Railroad Co.*, 25 Barb. (N. Y.) 662.

There is no statute of this state which modifies or is inconsistent with this general rule. Shuck's former suit was in the nature of a creditor's bill. Its object was to enforce a resulting trust or to subject to his demands the equitable assets of his debtor. If not strictly a proceeding in rem, it was of that nature. It is attended by the same incidents and enforced by the same remedies. By the filing of his

complaint the district court acquired jurisdiction of the res. Section 50 of our Code provides that from the filing of the complaint or the service of the summons in a civil action the court shall be deemed to have acquired jurisdiction and to have control of all subsequent proceedings. By filing at the same time notice of lis pendens there was created a lien which attached at the time the notice was filed, the effect of which was to prevent interference by third parties with the property during the pendency of the action and to preserve it to answer any valid judgment the court might thereafter render concerning it. An attachment remains a continuing security for any judgment that may be obtained. *Johnson v. Collins*, 116 Mass. 392. It is an incumbrance from the time of its levy and a subsequent judgment relates back to that time. *Kelsey v. Remer*, 43 Conn. 129, 21 Am. Rep. 638. So also, and on the same principle, an equitable levy by a creditor's bill has the same virtue as a lien by attachment, in that a subsequent judgment therein relates back to the time of the levy. There is some conflict in the authorities as to the time when such an equitable lien attaches, and also as to the time when constructive notice begins to run in lis pendens. Some cases say that the time is coincident with service of the subpoena. At least one case declares that if service of that writ is had after the bill is filed, the lien by relation attaches as of the date the bill was filed. Other cases are that there is no relation and service of the writ initiates the lien as of the day of actual service. Among other reasons that led our general assembly to enact section 38 of our Code of Procedure, one doubtless was to fix the time when lis pendens begins to run. Section 38 provides that in any suit or other proceeding affecting title to real property, the plaintiff at the time of filing his complaint or at any later time during the pendency of the suit, may file with the county recorder of the county a notice of its pendency, (stating what it shall contain), and only from the time of filing of such notice shall the pendency of the suit be constructive notice to a purchaser or incumbrancer of the property described in the

pleading. The meaning, of course, is that the notice, when filed, is constructive notice of the suit and is effective as such from and after the day of filing. Lis pendens was not created by this section. It merely modifies or restricts the common law on that subject. *Buckhorn Co. v. Consolidated Co.,* 47 Colo. 516, 108 Pac. 27. However, the section makes inapplicable decisions of courts at variance with its provisions. Some courts have held, where a statute does not otherwise provide, that in case of service of process, like a summons by publication, lis pendens takes effect and the lien attaches on completion of the publication. 25 Cyc. p. 1465 (2). But by our section 38 constructive notice takes effect the very day it is filed, even though publication of the process is not then complete. So also are inapplicable decisions of other states that lis pendens is not primarily a rule of notice at all but only of public policy. Section 38 expressly makes filing of notice of lis pendens constructive notice. So that we conclude that Shuck in cause No. 3621 procured a specific lien on this property January 26, 1917, when notice of lis pendens was filed, at which time the deed of plaintiffs was not on record and was not recorded until March 20, nearly two months later. The district court in that action obtained jurisdiction of the res upon the filing of his complaint, and filing of notice of lis pendens initiated or created an equitable levy, for the reasons above given. If this jurisdiction was not lost or exceeded during the further progress of the case, and if jurisdiction of the defendants to the extent of charging their property in Colorado by impressing it with the lien thus procured, was properly acquired, the decree rendered was not only not a nullity but it was valid and binding upon these parties and their privies.

The only specific failure of the creditor in this respect which the plaintiffs point out, is his neglect in the creditor's suit to sue out a writ of attachment and cause it to be levied on the property. It must be remembered that the legal title of this property was not then, and never had been, in David the debtor, but it stood on the records in the

name of his wife Cora. The creditor in his complaint states facts which, if true, gave rise to a resulting trust. By section 115 (2) of our Code a writ of attachment is executed or levied on real estate or any interest therein belonging to the defendant but which stands on the records in the name of any other person, by leaving with such person or his agent a copy of the writ and a written notice that the described property is attached pursuant to the writ and by filing a copy of the writ and notice with the recorder of the county. We must presume for our present purpose, as the fact undoubtedly is, that this property belonged to the defendant debtor. On the records it stood in the name of Cora, his wife. Both were non-residents, absconders, and he was a fugitive from justice. Neither had an agent in Colorado on whom service or execution of the writ of attachment could be made. Had a writ of attachment been sued out by the creditor, it was impossible to execute it as required by section 115, because all the statutory steps essential to a valid levy must be taken or no valid seizure can be made. *Graham v. Reno*, 5 Colo. App. 330, 38 Pac. 835. Failure, therefore, of Shuck to sue out a writ of attachment was excusable. No seizure or levy upon this property by or under an attachment was possible in this state, and the only remedy, if any, left to the creditor was that invoked by him, a creditor's suit, by which, in this state, as generally, an equitable lien may be procured, or an equitable levy made.

But these plaintiffs further contend, even if none of the objections hereinbefore considered prevented or made impossible the maintenance of the creditor's suit, still the case as made therein is not one where jurisdiction of the parties can be acquired by publication of summons, and, unless such jurisdiction was acquired, the judgment is a nullity. Not so. First we say the proceeding in cause No. 3621 was not based on the Nebraska judgment. Courts differ as to whether a foreign judgment is a basis in the courts of another state for a creditor's bill. It is in Michigan (*Earle v. Circuit Judge*, 92 Mich. 285, 52 N. W. 615),

and in some other states. Some federal courts entertain jurisdiction of the basis of a judgment in a state court. Other courts hold to the contrary, but that question is not now before us. The Nebraska judgment was pleaded merely as a part of the history of the transaction between the creditor and the debtor and as evidence of a debt. No virtue was or is by the defendants claimed for it as a domestic judgment of itself authorizing the maintenance of a creditor's suit. It was proper, however, in the creditor's suit to plead it, as was done, and proper for the trial court to give to it the good faith which the courts of one state or jurisdiction are required to give to judgments of a sister state. We are entitled also to presume that there was enough evidence aside from the Nebraska judgment to establish the debt against the defendant. It was entirely competent for the Larimer county district court to ascertain from any legal evidence the amount of this debt and quite within its jurisdiction, on service of summons by publication, to fix the amount of the debt or judgment against the defaulting debtors and to restrict its effect, as it did, to satisfaction out of the property impressed with the lien, and over which it had already acquired control. The decree in the creditor's suit does not purport to be one in personam, but if it erroneously did, or purported to be, or assumed to be, a personal liability of the defendants, but in effect is only a judgment in rem taken as a whole, and such is its nature, it would not be invalid because of such irregularity. 17 Encyc. of Pl. & Pr., p. 119. Section 45 of our Code itself refutes the contention of the plaintiffs here, as does the Hanscom case *supra*. That section expressly declares that service by publication of summons may be made in cases of attachment, foreclosure, claim and delivery, or other proceedings where specific property is to be affected, or the procedure is such as is known as a proceeding in rem. A creditor's bill, as we have already seen, is a proceeding in rem. It also affects specific property. In addition to this authority, the following cases asserting the power of courts by publication of sum-

mons in a creditor's bill to ascertain the amount of the debt and cause the same to be satisfied out of property in the state which the court has thereby drawn within its jurisdiction, are: *Day v. Washburn,* 24 How. (U. S.) 352, 16 L. Ed. 712; *Heidritter v. Oilcloth Co.,* 112 U. S. 294, 5 Sup. Ct. 135, 28 L. Ed. 729; *Boswell's Lessee v. Otis,* 9 How. (U. S.) 336, 13 L. Ed. 164; *Arndt v. Griggs,* 134 U. S. 316, 10 Sup. Ct. 557, 33 L. Ed. 918; *Jennings v. Rocky Bar G. M. Co.,* 29 Wash. 726, 70 Pac. 136; *Cooper v. Reynolds,* 10 Wall. 308, 19 L. Ed. 931; *Pennoyer v. Neff,* 95 U. S. 714, 24 L. Ed. 565; *First Nat. Bank v. Gage,* 93 Ill. 172, 5; *Miller v. Sherry,* 2 Wall. 237, 238, 239, 17 L. Ed. 827.

3. Our understanding is that the creditor does not claim that the mere filing of a notice of lis pendens creates a prior lien, but he does say that the facts of filing of the complaint and the notice, considered and construed together and in connection with section 4902, C. L. 1921, of our recording act, have that effect and make the sheriff's deed superior to the unrecorded deed of plaintiffs. Plaintiffs contend that the lis pendens affords protection only as against transfers made or rights otherwise acquired after, but not before, the institution of the creditor's bill. Cases so hold and, speaking generally, the contention is correct. But the question of priority, as between the holder of a lien, that has merged into a judgment, procured after a deed is delivered but before it is recorded, is not to be determined here by the effect of the filing of the complaint or the notice alone, but the combined effect of such filings in connection with our recording act. This act provides that all deeds and agreements in writing which affect the title to real estate or any interest therein may be recorded in the office of the recorder of the county wherein the real estate is situate "and from and after the filing thereof for record in such office, and not before, * * * shall take effect as to subsequent bona fide purchasers and incumbrancers by mortgage, judgment or otherwise not having notice thereof." Bearing in mind that section 38 of our Code of Procedure specifically makes the filing of

notice of lis pendens in a creditor's suit constructive notice from the date of its filing, and that the beginning of the chancery suit in connection with the filing of the notice creates or initiates from the time of filing the notice an equitable lien upon the property affected, and that our recording act, as between the holder of an unrecorded deed and the holder of an incumbrance such as an equitable lien, prefers the latter, we are of opinion that the rights of defendants, the holders of an incumbrance before plaintiffs' deed was placed on record, are superior. In a recent case, *Stetler v. Winegar, et al.,* 75 Colo. 500, 226 Pac. 858, we had occasion to consider this question and there held: "While as between immediate parties such agreements are not affected or made void by a failure to file for record, such unrecorded instruments do not take effect as against a subsequent bona fide purchaser (or incumbrancer) who has no notice thereof. There are statutes of other states which expressly declare that a failure to file for record such instruments renders them void. Our statute does not expressly so declare, but there is no difference, so far as affects the rights of subsequent purchasers without notice, (and incumbrancers) between a statute which declares such instruments void and those declaring that they shall not take effect without a filing for record." See also *Cheever v. Minton,* 12 Colo. 557, 21 Pac. 710, 13 Am. St. Rep. 258, and *Western Chem. Co. v. McCaffrey,* 47 Colo. 397, 107 Pac. 1081, 135 Am. St. Rep. 234. Such is the weight of authority under recording statutes like ours. *Commissioners v. Lips,* 69 Kas. 252, 76 Pac. 851; *Smith v. Worster,* 59 Kas. 640, 54 Pac. 676, 68 Am. St. Rep. 385. In 17 R. C. L. p. 1030, § 26, the author says that apparently the weight of authority is that the holder of an unrecorded conveyance made before the commencement of an action cannot be regarded as a purchaser pendente lite. He immediately proceeds to say: "Other cases, however, maintain the reverse of this proposition, and they are undoubtedly correct, if they arose in states whose statutes in effect provided that an instrument not duly recorded should have no effect as

against persons having no actual notice thereof." We have only recently held in the Stetler Case *supra* that our statute in effect provides that an instrument not duly recorded shall have no effect as against subsequent purchasers and incumbrancers without actual notice. The same author, at page 1035, § 30, says that the day of filing of the notice of lis pendens is generally the day when the lien becomes effective, citing to this proposition the Cheever Case above mentioned of our own court. In 23 R. C. L. p. 255, § 123, the same statements are found. See also *Newman v. Chapman,* 2 Rand. (Va.) 93, 14 Amer. Dec. 766. In Bennett on Lis Pendens, §§ 295-297, citing *Norton v. Birge,* 35 Conn. 250, 263; *Hoyt v. Jones,* 31 Wis. 389, 397, and other cases, our conclusion is sustained. At section 275 the author says filing of creditor's bill constitutes an equitable levy. See also 25 Cyc. p. 1447, *et seq.* At page 1457 it is said that a creditor's suit creates a lien; and that the rule of lis pendens applies thereto independent of the lien acquired by its institution. See also page 1463, and page 1480, where a conveyance is delivered before, but not recorded until after, the commencement of an action, the person taking it is a pendente lite purchaser or encumbrancer.

We conclude, therefore, that the plaintiffs' warranty deed is subject and inferior to the sheriff's deed of the defendants.

4. Our resolution of the foregoing propositions is decisive against the plaintiffs' further contention that they are not bound by the former judgment in the creditor's suit, because they were not parties thereto. Of course, the general rule is that persons not parties to an action are not bound by the judgment. Parties and privies, however, are bound. The plaintiffs here are privies to the defendants in the creditor's suit. The judgment against their grantors, to whom they are privies, binds them, even though not parties to the suit. The plaintiffs also are, as we have said, purchasers pendente lite and are to be treated as such and get nothing by their purchase made in law during the pendency of the suit, because their rights and interests in the

property in controversy, if any, attached as against the plaintiffs after the latter had acquired a lien that afterwards ripened into a judgment under which they claim.

Our conclusion on the whole case is that the judgment in this case was wrong and that the learned trial judge rightly made the former decree in the creditor's suit which controls the rights of the parties. The judgment and decree in the instant case, therefore, must be reversed and the cause remanded with instructions to the district court to set aside its decree quieting title in the plaintiffs. Such further proceedings as may be had below must be in accordance with the views expressed in this opinion.

MR. CHIEF JUSTICE TELLER and MR. JUSTICE SHEAFOR concur.