No. 11,859.

J. H. HINCKE PRINTING COMPANY *v.* BAILEY, TRUSTEE.

Decided January 16, 1928.   Rehearing denied February 6, 1928.

Action to set aside alleged fraudulent transfer of a bankrupt's assets.   Judgment for plaintiff.

## *Affirmed.*

1. BANKRUPTS—*Trustee's Status.*  A trustee in bankruptcy holds the rights which the bankrupt had at the time the bankruptcy proceedings were filed.

2.        *Trustee's Status.*  A trustee in bankruptcy takes the status of a creditor holding a lien by legal or equitable process as of the time when the petition in bankruptcy was filed.

3.        *Trustee—Title.*  A trustee in bankruptcy may take his choice of the bankrupt's or creditor's title if he is in a position to assert either.

4. DEBTOR AND CREDITOR—*Judgment—Enforcement.*  A judgment creditor of a corporation is clearly entitled to enforce his judgment against any legal or equitable assets belonging to the company.

5. CHATTEL MORTGAGES—*Foreclosure—Fraudulent Sale.*  If through fraud and collusion between a mortgagee and purchaser the mortgaged property is sold for a grossly inadequate price, this is ground for invalidating the sale, and gross inadequacy may amount to evidence of fraud.

6.        *Foreclosure—Sale—Duty of Mortgagee.*  In the absence of fraud a mortgagee is not necessarily bound to realize the market value of the chattels, but will be held to the exercise of reasonable care and diligence in the disposition of the property, and also to account for any surplus remaining after the debt is discharged.

7. BANKRUPTS—*Trustee's Status.*  A trustee in bankruptcy succeeds to the rights of the creditors and has the right to maintain an action to set aside a fraudulent sale of chattels under mortgage foreclosure.

8. CHATTEL MORTGAGE—*Foreclosure—Fraud.*  In an action to set aside an alleged fraudulent sale of property under chattel mortgage foreclosure, the question is whether the transaction was simply a fair exercise of a legal right to collect an honest debt according to the

terms of the instrument by which it was secured, or whether it was a transaction intended to delay creditors and prevent property of the debtor coming to their use.

9.      *Foreclosure—Fraud—Bankrupt.*   Sale of property of a bankrupt under mortgage foreclosure held, under the facts disclosed, to have been a palpable fraud on the creditors of the bankrupt.

10.  APPEAL AND ERROR—*Parties—Argument.*   Where some of the defendants have acquiesced in the decree of the trial court, arguments in their behalf by other than their own counsel will be disregarded on review.

*Error to the District Court of the City and County of Denver, Hon. Julian H. Moore, Judge.*

Mr. CHARLES E. FRIEND, for plaintiff in error.

Mr. R. H. WALKER, for defendant in error.

*Department Two.*

MR. JUSTICE ADAMS delivered the opinion of the court.

THE defendant in error was plaintiff and plaintiff in error was defendant in the trial court. When not otherwise designated, we shall refer to them as plaintiff and defendant, as aligned at the trial.

Plaintiff is trustee in bankruptcy of Sam T. Greene & Company, an insolvent corporation. He brought an action against the J. H. Hincke Printing Company and three other defendants, Cohen, Glavins and Agren, to set aside a fraudulent transfer of the bankrupt's assets. The findings and decree were for plaintiff. The Hincke company brings the case here for review; the three other defendants have acquiesced in the decree; the controversy in this court is solely between the Hincke company and the trustee in bankruptcy.

On May 2, 1925, Sam T. Greene & Company was the owner and in possession of a printing plant in Den-

ver, comprising linotype machines, furniture, printing presses, motors, binders, and general equipment incident to such business. On that day the above named company executed a chattel mortgage thereon, to Mrs. M. L. Cohen, to secure the principal sum of $6,600. It was subject to two prior mortgages not here involved, covering a part of the same chattels. It was expressly provided in the mortgage that the mortgagor might retain possession until default, but that on default, the mortgagee might take possession and sell at public or private sale, on such terms as the mortgagee saw fit. Cohen, Glavins and Agren were the holders of the mortgage at the time of the acts complained of. They are hereafter referred to as the mortgagees.

Plaintiff's complaint set forth the existence of the above mortgage, and declared in substance that on or about April 1, 1926, the mortgagor was unable to pay its current obligations, was heavily indebted, and in default in the payments on the mortgage; that one J. H. Hincke was the principal stockholder and was the manager and an officer of the mortgagor company at all times; that he, and the Sam T. Greene company, and the defendants Glavins, Cohen and Agren, fraudulently conspired that Cohen should foreclose the mortgage, that Hincke should organize a new corporation to be known as the J. H. Hincke Printing Company, and that at the foreclosure sale the Hincke company should be permitted to acquire the property for the amount of the Cohen mortgage, plus a commission of $500, and that the Hincke company would then execute its chattel mortgage to the defendants Glavin, Cohen and Agren, for the amount of the bid; that the Hincke company should continue the possession and operation of the plant at the same location; that the arrangement was carried out, and that the foreclosure sale was planned and accomplished for the fraudulent and collusive purpose of enabling the Hincke company to acquire the plant free and clear of the general and unsecured creditors of Sam T. Greene & Company, and to

hinder, delay and defraud such creditors; that the plant had a reasonable market value greatly in excess of the amount due on the mortgages; that the price bid at the sale was grossly inadequate and out of proportion to the reasonable value of the property; that the sale was void and that the new mortgage, executed by the Hincke company, was also void, wherefore plaintiff prayed to have them so declared and set aside.

The evidence shows that defendants' plans for the foreclosure sale and transfer of the plant to the Hincke company were made and consummated with rapidity after they got under way; they finished them within a few days, and all as a part of the same transaction. On April 2, 1926, the mortgagees prepared a notice of foreclosure sale, to take place on the mortgagor's place of business on the following Tuesday, April 6th, at 2 p. m. The notice was published in the Daily Journal in Denver in three issues, Saturday the 3rd of April, Monday the 5th and Tuesday the 6th. The general creditors of the Greene company were not notified of the proposed sale; it was adjourned to April 7th, at 2 p. m., at which time the plant was sold to the Hincke company for $5,440. The amount then due on the chattel mortgage was $4,832; no money changed hands; the Hincke company delivered a new mortgage to the mortgagees on the same property to secure the sum of $5,440. If the sale stands, the mortgagees will have realized $608 above the amount actually due them, and the Hincke company will have secured the property free and clear of the claims of the general creditors of the Greene company, who are numerous, and whose claims aggregate a large sum. The value of the plant is disputed. Plaintiff's witnesses showed it to be worth approximately from $10,000 to $11,000 at a forced sale, or about $20,000 if sold as a going concern. Defendants' witnesses made it much less, but the evidence justifies the court's finding that it was sold for a grossly inadequate sum.

The Hincke company was incorporated on or about April 3, 1926. All of its capital stock, except certain qualifying shares for directors, were issued to Hincke's attorney, counsel for plaintiff in error, with an agreement to transfer it to Hincke later. The printing plant in question constituted its sole assets (if it should acquire such plant), and the company was organized to take it over. The new chattel mortgage and inventory attached thereto were ready for delivery before the sale; Hincke approved its preparation; the items were numerous and evidently it took a long time to prepare the instrument. The new mortgage was signed and acknowledged by counsel for Hincke, in his capacity as president of the Hincke company, and by Hincke's daughter as secretary thereof; they acknowledged it on behalf of the company before Hincke as a notary public. It was delivered to the mortgagees as thus previously prepared, and was recorded in the afternoon of the day of the sale.

Hincke planned for the bankruptcy before the sale; on April 5th, 1926, he had a document ready, executed by the Greene company and signed by himself as its president, signifying the willingness of the company to be adjudged a bankrupt; on April 16, 1926, creditors of the concern filed a petition in bankruptcy, and on May 4, 1926, the company was adjudged a bankrupt and Bailey was appointed trustee. While so qualified and acting he brought this suit.

The essential facts of plaintiff's case are either admitted or amply proven, but defendants deny fraudulent intent and contend that their acts were legal. The decree did not disturb the mortgage of May 2, 1925 from the Greene company to Cohen, as to the actual amount due thereunder, but set aside the foreclosure sale thereunder, and the subsequent chattel mortgage executed by the Hincke company to the mortgagees.

1. The first question to be determined is the status of the trustee in bankruptcy, as applied to this case. We refer to the following provisions of the Bankruptcy Act:

§ 70 (a) 4: ''The trustee shall be vested by operation of law with the title of the bankrupt  *  *  *  to all  *  *  *  (4) property transferred by him in fraud of his creditors.''

§ 70 (e): ''The trustee may avoid any transfer by the bankrupt of his property which any creditors of such bankrupt might have avoided, and may recover the property so transferred, unless he was a bona fide holder for value, prior to the date of the adjudication. Such property may be recovered or its value collected from whoever may have received it, except a bona fide holder for value.''

§ 67 (e): ''And all conveyances, transfers or encumbrances of his property made by a debtor at any time within four months prior to the filing of the petition against him, and while insolvent, which are held null and void as against the creditors of such debtor by the laws of the State, Territory or District in which such property is situate, shall be deemed null and void under this act against the creditors of such debtor if he be adjudged a bankrupt, and such property shall pass to the assignee [trustee] and be by him reclaimed and recovered for the benefit of the creditors of the bankrupt.''

§ 47 (a) (2) as amended in 1910: ''and such trustees, as to all property in the custody or coming into the custody of the bankruptcy court shall be deemed vested with all the rights, remedies and powers of a creditor holding a lien by legal or equitable proceedings therein; and also, as to all property not in the custody of the bankruptcy court, shall be deemed vested with all the rights, remedies and powers of a judgment creditor holding an execution duly returned unsatisfied.''

The above provisions are set forth in a footnote in 4 Remington on Bankruptcy (3rd Ed.), 204, 205, § 1508.

Pursuant to the Bankruptcy Act, and following a long line of United States Supreme Court decisions and other cases, we have held that the trustee in bankruptcy holds the rights which the bankrupt itself had, at the

time the bankruptcy proceedings were filed, under the laws of the particular state. *Bogdon v. Fort*, 75 Colo. 231, 235, 236, 225 Pac. 247, and authorities there cited.

Under similar high precedents, we have referred to another measure of determination of the trustee's rights, that is, that he takes the status of a cerditor holding a lien by legal or equitable process as of the time when the petition in bankruptcy is filed. *Wilder v. Colorado Motor Finance Co.*, 79 Colo. 97, 102, 244 Pac. 596.

2. The trustee in bankruptcy may take his choice of the bankrupt's or creditor's title, if he is in a position to assert either. 4 *Remington on Bankruptcy*, (3rd Ed.) 302, § 1553; *Matter of Seward Dredging Co.*, 242 Fed. 225 (C. C. A. N. Y.) 39 Am. Bankr. Rep. 372.

3. In *Bodgdon v. Fort* and *Wilder v. Finance Co.*, *supra*, the trustees in bankruptcy lost because they were unable to establish themselves under the theory of the rights of the bankrupt or those of a creditor, and so there was no relief in either event. The chattel mortgages had been executed in good faith, and the good faith continued. There was no fraud in law, nor in fact. In the instant case, the Cohen chattel mortgage was bona fide, but the foreclosure sale thereunder was in bad faith. It was a subterfuge to deprive the bankrupt's creditors of their equity in the printing plant. The trustee did not seek to have the old mortgage set aside; he sought and obtained a decree that declared the sale thereunder to be fraudulent and void.

Whether, in the absence of bankruptcy, the fraudulent foreclosure sale of the Greene company printing plant would have given the company or some one else in its behalf a right to have the sale set aside is immaterial if the creditors had such right, which we shall now consider.

4. As said in Morawetz on Private Corporations, (2nd Ed.) 763, § 794, ''Judgment creditors of a corporation are clearly entitled to enforce their judgments against any legal or equitable assets belonging to the corporation. This includes a right to enforce any causes

of action belonging to the corporation by reason of a misappropriation of its funds or other invasion of its rights.. Such a cause of action would be equitable assets.'' Instances of collusive foreclosures and reorganiaztion schemes in derogation of the rights of creditors that have been set aside by the courts, will be found in *Railroad Co. v. Howard,* 7 Wall. 392, 19 L. Ed. 117; *Louisville Trust Co. v. Louisville, N. A. & C. Ry. Co.,* 174 U. S. 674, 19 Sup. Ct. Rep. 827, 43 L. Ed. 730; *Kansas City So. Ry. Co. v. Guardian Trust Co.,* 240 U. S. 166, 36 Sup. Ct. Rep. 334, 60 L. Ed. 579; *St. Louis Trust Co. v. Des Moines, N. W. Ry. Co.,* 101 Fed. 632; *Pittsmont Copper Co. v. O'Rourke,* 49 Mont. 281, 141 Pac. 849. ''And if, through fraud and collusion between the mortgagee and the purchaser, the property is sold for a grossly inadequate price, this is ground for invalidating the sale.'' 5 R. C. L. 469, § 103; Jones on Chattel Mortgages, (5th Ed.) § 802; *Gordon v. Clapp,* 113 Mass. 335. And gross inadequacy may amount to evidence of fraud. *Pestal v. O'Donnell,* 81 Colo. 202, 211, 254 Pac. 764.

5. In *First National Bank of Colo. Springs v. Wilbur,* 16 Colo. 316, 321, 323, 26 Pac. 777, we held that in the absence of fraud, the mortgagee is not necessarily bound to realize the market value of the chattels, but that he will be held to the exercise of reasonable care and diligence in the disposition of the property, and also to account for any surplus remaining after the debt is discharged. This law is in point in the case at bar.

6. In determining the status of the trustee in bankruptcy, it has often been said that he ''stands in the shoes of the bankrupt,'' but obviously while thus shod, the bankrupt could have been sued, as well as having the right to sue. Creditor's bills to set aside fraudulent transfers have often been entertained in Colorado courts. *Shuck v. Quackenbush,* 75 Colo. 592, 227 Pac. 1041, 38 L. R. A. 259. In the case before us, the trustee in bankruptcy has succeeded to the rights of the creditors. 4 Remington on Bankruptcy (3rd Ed.) 202–204, §§ 1507,

1508. It follows that the trustee had the right to maintain this action. If this were not so, it would nullify the Bankruptcy Act and make it ridiculous by rendering it impossible to collect for the bankrupt estate, fraudulently dissipated assets that could have been restored by proper action before the bankruptcy.

7. Nobody contends that there cannot be such a thing as a bona fide foreclosure sale of mortgaged chattels, with or without judicial process. We shall appropriate to our own use the clear thought, well expressed by the Supreme Court of Massachusetts in *Gordon v. Clapp, supra,* p. 340 wherein it is said that the question is "Whether the transaction was simply the fair exercise of a legal right to collect an honest debt according to the terms of the instrument by which it was secured, or whether it was a transaction intended to delay creditors and to prevent the property of the debtor coming to their use."

8. The defendants in the case before us lost on the issue as to whether the mortgage foreclosure sale was in good faith, or bad. The evidence fully justifies the inference of mala fides as found by the trial court. Such evidence can scarcely be even called conflicting. Looking at it from the standpoint of the admitted facts, everybody knows that too much crudely bespattered paint, often easily marks the identity between an imitation picture and the genuine masterpiece, and courts have ever delighted in exposing the spurious in the interest of justice. Read the decisions cited in paragraph numbered 4, of this opinion. The cut and dried so-called "public sale," put through in well nigh post haste, with all papers ready for interchange between the mortgagees and favored purchaser, would seem to indicate more of an itch for speed and anxiety to prevent disaster to the conspiracy, rather than a bona fide effort to attract bidders. As a symbol, we can only regard it as a grotesque finishing touch to a palpable fraud on the creditors of the bankrupt.

9. The Hincke company claims certain credits, by virtue of taxes paid, payments on the old mortgage, and various expenses laid out on behalf of the Sam T. Greene company. Such claims, whether incurred before or after the fraudulent transfer, are not for us to pass upon. They have been filed in the federal court in the Greene company bankruptcy proceeding, and are for the court to decide.

10. The Hincke company, purchaser at the fore-closure, and the mortgagees, were represented by different counsel. Counsel for the former has assumed to argue in this court certain points on behalf of all defendants, but as said above, the mortgagees are not in this court; the fraudulent sale gave them $608 above their mortgage debt, and consequently it was not theirs; the trial court put it back where it belonged, and at the same time protected their claim to the extent that it was bona fide; they have acquiesced in the decree, and arguments for them other than by their own counsel may be safely disregarded. Other arguments by counsel for the Hincke company are either on undisputed points or such that they have no bearing on the final result.

We approve of the judgment and it is accordingly affirmed.

MR. CHIEF JUSTICE BURKE, MR. JUSTICE CAMPBELL and MR. JUSTICE BUTLER concur.