MEGABANK FINANCIAL CORPORA-
TION and Megabank of Arapahoe,
N.A., Plaintiffs–Appellants,

v.

ALPHA GAMMA RHO FRATERNITY, an
Illinois corporation, and Alpha Gamma
Rho Chapter House Loan Fund, Defen-
dants–Appellees.

No. 90CA1639.

Colorado Court of Appeals,
Div. II.

Jan. 30, 1992.

Rehearing Denied June 11, 1992.

Certiorari Denied Dec. 1, 1992.

Holmes & Starr, P.C., Jeffrey Reiman,
Matthew C. Colonell, Denver, for plaintiffs-
appellants.

Ireland, Stapleton, Pryor & Pascoe, P.C.,
Michael A. Smith, Jennifer A. Ostrom, Den-
ver, for defendants-appellees.

Opinion by Judge TURSI.

Plaintiffs, Megabank Financial Corpora-
tion and Megabank of Arapahoe, N.A. (col-
lectively Megabank), appeal the judgment
entered by the trial court in favor of defen-
dants, Alpha Gamma Rho Fraternity (AGR)
and Alpha Gamma Rho Chapter House
Loan Fund (Loan Fund). We affirm.

The following undisputed facts give rise
to this appeal.

Loan Fund is a division of AGR and is a
national organization which assists its local
chapters in the purchase, financing, con-
struction, or renovation of fraternity hous-
es. The AGR chapter in Fort Collins occu-
pied a fraternity house which was owned
by the Colorado Alpha Gamma Rho Build-
ing Association, Inc. (Building Association).

Building Association undertook to reno-
vate its chapter house. Accordingly, it bor-
rowed $500,000 from Mortgage Finance
and secured the promissory note with an
assignment of rents, a guaranty by Loan
Fund, and a first deed of trust on the
property. Building Association thereafter
borrowed $50,000 from Loan Fund. This
debt was also secured by a deed of trust
which, because of its late recording, was in
position as the third encumbrance on the
property. And finally, Building Associa-

tion borrowed an additional $250,000 from Megabank for the renovation project.

Approximately two years later, Building Association defaulted on the foregoing loans, and the holder of the first deed of trust commenced foreclosure proceedings to recover the $568,000 due on its note. However, Loan Fund, a guarantor on the note secured by the first deed of trust, prevented the foreclosure by negotiating a purchase of the first note for $510,000 in exchange for an assignment of all rights in the note and first deed of trust. Accordingly, Megabank's lien remained in a junior position.

Shortly thereafter, Loan Fund agreed to permit Building Association to make eight reduced monthly payments on the first mortgage, but it also then demanded payment of the outstanding balance and threatened foreclosure. Building Association subsequently made its first reduced monthly payment to Loan Fund, after which Loan Fund instituted its foreclosure proceedings.

Loan Fund continued to work with the AGR chapter and Building Association despite this course of events. Building Association tendered its second monthly payment to Loan Fund, and Loan Fund applied this payment, as well as $20,000 in proceeds from Building Association's personal property, as payment toward its $50,000 renovation loan secured by the third deed of trust.

Nevertheless, Loan Fund decided to proceed with the foreclosure, and at the sale, it bid $687,000 to purchase the property, the full amount owed on the first mortgage. The trial court found that Megabank did not seek to redeem the property, owing to lack of funds, its own evaluation of the property as being worth no more than $500,000, and its reliance on personal guaranties of certain purportedly wealthy alumni. Accordingly, Megabank lost its deed of trust position. Its efforts to collect from the makers and guarantors on the note were not successful.

Megabank brought suit in district court requesting the court to declare that the Loan Fund foreclosure which extinguished Megabank's rights was collusive in nature, that it set aside the foreclosure and conveyance to Loan Fund, and that it order the Public Trustee to reinstate Megabank's deed of trust as a first lien against the property.

At trial, the court found that, at the time of the foreclosure, the property was not worth more than $500,000 and that Loan Fund owed no duty to Megabank. The trial court also concluded that:

Under no circumstances except through elimination of the first deed of trust could plaintiff come out on its claim against the property. In making the loan originally, plaintiff relied primarily on the fact that there would be refinancing within three years and upon the personal guarantees of the three rich alums who apparently turned out to be judgment proof. Had the payments on the first been made through January of 1988, plaintiff still would have had only a judgment against Building Association, the guarantors and second deed of trust. In my view plaintiff has failed to show any damages because of the breach, if any, of Loan Fund; and, accordingly, its claim must fail.

■ The issue on appeal is whether the trial court erred as a matter of law by holding that Megabank was not entitled to equitable relief because it failed to suffer damages. Megabank urges that, because its claim is for restitution grounded upon the equitable theory of unjust enrichment, damages are not a required element of recovery. We disagree.

Here, no fiduciary relationship existed between Megabank and Loan Fund; therefore, Megabank's equitable claim for relief must be based upon its assertion that defendants engaged in a collusive foreclosure. See Moore & Co. v. T–A–L–L, Inc., 792 P.2d 794 (Colo.1990). In order to satisfy the element that defendants received title to the property under inequitable circumstances, Megabank must establish that AGR and Loan Fund colluded on the mortgage foreclosure for the sole purpose of extinguishing Megabank's junior security position. However, as the trial

court found, equity did not require Loan Fund as a guarantor to jeopardize its position by paying off the original note and still remain junior to Megabank.

■ A collusive foreclosure under power of sale is a fraudulent conveyance. The fundamental element of a fraudulent conveyance is whether the debtor's estate is unjustly diminished. 1 G. Glenn, *Fraudulent Conveyances* §§ 214a & 275 (rev. ed. 1940).

■ A fraudulent conveyance results whether of real or personal property if, "as a result of the debtor's operations on the title to his property, the creditor loses by reason of finding less to seize and apply to his claim." 1 G. Glenn, *Fraudulent Conveyances* §§ 195 & 275 (rev. ed. 1940). On the other hand, "no injury can result from a sale of an asset at its fair value. The reason is that ... the estate [does not] abate as a result of what was done." 1 G. Glenn, *Fraudulent Conveyances* §§ 199 & 214a (rev. ed. 1940).

■ A chattel mortgage foreclosure is collusive if "it [is] a transaction intended to delay creditors and to prevent the property of the debtor coming to their use." *J.H. Hincke Printing Co. v. Bailey*, 83 Colo. 242, 263 P. 719 (1928). However:

> [T]he debtor's intent, and the good faith of the transferee, are judged by the result as affecting the debtor's estate ... [T]he distinguishing feature of the fraudulent conveyance is that it unjustly diminishes the debtor's available estate; but, on the other hand, the creditors have no right beyond that point. So long as the transfer does not diminish the estate, the motives of debtor and grantee are immaterial.

1 G. Glenn, *Fraudulent Conveyances* § 300 (rev. ed. 1940).

In this case, the trial court found that the property at issue was not worth in excess of $500,000. It is likewise undisputed that the property was encumbered well beyond its market value at the time of the foreclosure. Finally, it is uncontested that Loan Fund purchased the property for consideration in excess of its fair market value.

Under the circumstances here in which Megabank could not reach the property, the foreclosure and subsequent fair market value conveyance did not place any assets beyond its reach. Hence, the trial court concluded that the equities did not require Loan Fund to pay off the note. It found that Loan Fund was not in the business of owning property and that having expended $510,000 to pay off the first mortgage it was not required to jeopardize its position on behalf of the plaintiffs. There is evidence in the record to support the trial court's findings and conclusions, and therefore, they are binding upon us. *See Broncucia v. McGee*, 173 Colo. 22, 475 P.2d 336 (1970).

Accordingly, the trial court properly held that plaintiff's claim must fail.

The judgment of the trial court is affirmed.

JONES and ROTHENBERG, JJ., concur.