**CROWN LIFE INSURANCE COMPANY, a Canadian corporation, Plaintiff–Appellant,**

v.

**APRIL CORPORATION, a Colorado corporation; H.R. Land Company, a Colorado corporation; Gov. R. Land Company; and Homestead Land Company, Defendants–Appellants.**

**No. 91CA1967.**

Colorado Court of Appeals,
Div. III.

Dec. 3, 1992.

As Modified on Denial of Rehearing
Jan. 28, 1993.

Certiorari Denied July 12, 1993.

Fairfied and Woods, P.C., Robert A. Holmes, John M. Tanner, Denver, for plaintiff-appellant.

Faegre & Benson, Frederic K. Conover, Russell O. Stewart, Denver, for defendant-appellant April Corp.

Ambler & Frye, P.C., Robert L. Frye, Denver, for defendants-appellants H.R. Land Co. and Gov. R. Land Co.

No appearance for defendant-appellant Homestead Land Co.

Opinion by Judge SMITH.

Plaintiff, Crown Life Insurance Company (Crown), appeals from an order of the trial court entered pursuant to C.R.C.P. 105(f)(2) releasing its lis pendens previously filed on certain property titled in defendants, H.R. Land Company, Gov. R. Land Company, Homestead Land Company (Land Companies), and April Corporation (April). We reverse.

The following facts are not in dispute. For many years, S.G. Asset Management Corporation (SG) had developed property and constructed family residences in the Denver area. To finance these activities, SG obtained loans from a number of banks, pledging its real property as security. Over time and due in part to the depressed real estate values of the late 1980s, the amount of these bank loans increased until their amounts far exceeded the value of the real property pledged as collateral.

Unable to service its debt because of the foregoing circumstances, SG, upon the recommendation of its president, Charles Sanford, transferred substantially all its real property to the three defendant Land Companies in March 1990. Each Land Company took SG's property subject to all existing indebtedness, expressly assuming and agreeing to pay all of the outstanding indebtedness secured by the properties.

The plan was that the Land Companies would resell these properties to service the debt. Indeed, some of these properties were sold by the Land Companies, for their appraised value, to defendant April, a local home building corporation, which was originally capitalized by Sanford who has throughout been April's sole director.

During this period, SG was also leasing office space from Crown. In July 1990, SG defaulted on its lease with Crown, and, in September, Crown filed a complaint against SG to recover the amounts due under the lease. Crown moved for and was granted summary judgment on this claim in the amount of $52,887 plus interest. At the same time, the trial court granted Crown's motion for leave to file an amended complaint alleging that April was a successor corporation, liable for SG's debts.

In September 1991, Crown filed a second amended complaint against SG, April, and the Land Companies which included the prior allegation that April was liable for SG's debts under a theory of successor liability. Additionally, Crown alleged that SG had transferred certain real property including that land subsequently conveyed to April, to the Land Companies, for the purpose of defrauding, delaying, and hindering its creditors, including Crown, from collecting their debts. In connection with this claim for relief, Crown sought to have the transfers ruled void and the property reconveyed to SG to satisfy SG's debt to Crown.

Shortly thereafter, Crown filed several notices of lis pendens against many of the properties transferred to the various Land Companies in March 1990. A number of

these properties were the properties which April had purchased.

Upon Crown's filing, April's sale of these particular properties became contingent on the release of the various respective lis pendens. The Land Companies' pending sales were likewise affected. As a result, April thereafter filed *inter alia* an emergency motion under C.R.C.P. 105(f)(2) and C.R.C.P. 65 seeking cancellation, release, and discharge of Crown's notices of lis pendens and in effect seeking an injunction against the future filing of notices of lis pendens.

Following a hearing, the trial court entered an order granting the relief requested under C.R.C.P. 105(f)(2). The court order concluded that Crown's affirmative claims for relief in its pending lawsuit were insufficient to support filing notices of lis pendens under C.R.C.P. 105(f) and, hence ruled that the notices were void *ab initio.* The trial court also entered an order pursuant to C.R.C.P. 54(b) thus making its order final and subject to this appeal. After the trial court's ruling, April's C.R.C.P. 65 motion was withdrawn as moot.

The sole issue raised on appeal is whether the trial court's order was in error. We conclude that it was.

C.R.C.P. 105(f) governs our analysis. C.R.C.P. 105(f)(1) provides in relevant part:

[A]fter filing any pleading wherein the affirmative relief is claimed *affecting the title to real property*, a party may record in the office of the clerk and recorder of the county in which the property is situated a notice of lis pendens.... (emphasis added)

In short, the rule provides a method of providing "constructive notice" to potential purchasers or lenders that a lawsuit is pending which may affect title to specific property.

The notice of lis pendens rule, together with the recording statute, § 38–35–110, C.R.S. (1982 Repl.Vol. 16A), temper the harsh effects of the common law doctrine which provided that one who acquired an interest in property, with or without notice of pending litigation as to its title, took his interest subject to any adverse interests

finally determined in such litigation. *Hammersley v. District Court,* 199 Colo. 442, 610 P.2d 94 (1980).

One relevant effect of C.R.C.P. 105(f) relative to notice of lis pendens is that, for all intents and purposes, it renders the real property described in the notice unmarketable. *La Paglia v. Superior Court,* 215 Cal.App.3d 1322, 264 Cal.Rptr. 63 (1989). Hence, as expressly stated in the rule, a notice of lis pendens is proper only if the outcome of the pending litigation will or may specifically affect the status of the title to real property. *Peoples Bank & Trust Co. v. Packard,* 642 P.2d 57 (Colo. App.1982).

Here, the trial court concluded that Crown's lawsuit, and in particular, the claim of fraudulent conveyance under § 38–10–117, C.R.S. (1992 Cum.Supp.), failed to meet the foregoing condition. Specifically, the trial court found and concluded that this claim was designed "to secure a potential future judgment," relief which it considered as being unrelated to a right to possess, use, or enjoy real property.

The crux of Crown's argument on appeal is that the trial court erred in concluding that Crown's claim of fraudulent conveyance fell outside C.R.C.P. 105(f). Therefore, Crown argues, the court's order should be reversed and the notices of lis pendens reinstated. We agree.

■ Our resolution of this issue is mandated by the ruling in *Hammersley, supra,* that the language "affecting title to real property" as found in C.R.C.P. 105(f) should be given a broad interpretation in order to promote the policies behind the Rule. Accordingly, our appellate courts have construed this language to include not only actions which involve disputed questions of actual title, *see Perry Park Country Club, Inc. v. Manhattan Savings Bank,* 813 P.2d 841 (Colo.App.1991), but also actions which involve determinations of rights and liabilities incident to ownership. *Hammersley, supra; Cooper v. Flagstaff Realty,* 634 P.2d 1013 (Colo.App. 1981).

A proceeding by a creditor to set aside a conveyance as fraudulent under § 38–10–117 clearly falls within this spectrum of actions.

In such a proceeding, the creditor's claim is that the conveyance was undertaken by the debtor with the intent to place the property beyond the creditor's reach. *See Tibbetts v. Terrill,* 44 Colo. 94, 96 P. 978 (1908). If the claim of fraudulent conveyance is established, § 38–10–117 provides that such conveyance "shall be void." Accordingly, a claim of fraudulent conveyance directly challenges the *validity* of the conveyance and, hence, title. *North Carolina National Bank v. Evans,* 296 N.C. 374, 250 S.E.2d 231 (1979); *see also* 1 Glenn, *Fraudulent Conveyances* § 91 (rev. ed. 1940).

Indeed, perhaps because a claim of fraudulent conveyance so directly implicates title to real property, the propriety of a notice of lis pendens in such circumstances has not been challenged in Colorado. *See Tibbetts v. Terrill, supra; Shuck v. Quackenbush,* 75 Colo. 592, 227 P. 1041 (1924).

Moreover, other jurisdictions which have directly addressed this issue under philosophically similar statutes and procedural rules have consistently concluded that the filing of a notice of lis pendens is proper if, as here, the nature of the claim, albeit triggered by an attempt to satisfy a monetary debt, alleges a fraudulent conveyance or transfer. *North Carolina National Bank v. Evans, supra; Greenfield v. Superior Court,* 225 Cal.App.3d 947, 275 Cal. Rptr. 578 (1990).

Based on the foregoing, therefore, we hold that a claim for relief by a creditor under § 38–10–117 constitutes an action "affecting title to real property" within the meaning of C.R.C.P. 105(f).

Likewise, and for the same reasons, we reject the arguments of April and the Land Companies that Crown's claim to relief was essentially a request for a prejudgment lien and that, hence, Crown's remedy to enforce its judgment was under C.R.C.P. 102, not C.R.C.P. 105. Accordingly, the trial court's conclusion to the contrary was in error.

## II.

In their briefs and before us during oral argument, April and the Land Companies raised an additional argument as justification for the trial court's release of Crown's lis pendens. They assert that Crown's fraudulent transfer claim for relief, even if proper under C.R.C.P. 105, was patently without merit inasmuch as SG had no equity in the properties it transferred to the Land Companies in March 1989.

The trial court did not reach and, thus, made no determination as to this issue in its order releasing the lis pendens. We therefore likewise decline to address this issue on appeal.

The trial court's order is reversed, and the cause is remanded with directions to order the lis pendens reinstated, pending resolution of all other relevant issues.

CRISWELL and ROTHENBERG, JJ., concur.