8 P.3d 1182

**TWE RETIREMENT FUND TRUST, a Nevada Trust, by William Eversole, Trustee; and Linda L. Proctor Separate Property Trust, a Nevada Trust, by Linda Proctor–Eversole, Trustee,**

**Plaintiffs–Appellants,**

v.

**James J. REAM and Amy Ream, husband and wife, Defendants–Appellees.**

**No. 1 CA–CV 99–0497.**

Court of Appeals of Arizona, Division 1, Department C.

Aug. 31, 2000.

**270**

Stegall, Katz & Whitaker, P.C. By Philip B. Whitaker, April D. Miller, Phoenix, for Plaintiffs–Appellants.

Renaud, Cook & Drury, P.A. By James L. Blair, Timothy J. Watson, Phoenix, for Defendants–Appellees.

## OPINION

VOSS, Judge.

¶ 1 This appeal raises a question of first impression in Arizona: whether a litigant may properly file a notice of lis pendens on Arizona real property in connection with extraterritorial litigation potentially affecting title to that property. The trial court answered this question affirmatively, and also concluded that the defendants in the extraterritorial action could not recover on their subsequent claim for the wrongful filing of a lis pendens asserted against the plaintiffs' attorney. This appeal followed. We have jurisdiction, see Arizona Revised Statutes Annotated ("A.R.S.") section 12–2101(B)(1994), and affirm.

### I. BACKGROUND

¶ 2 The property in question consists of nine parcels located in Mohave County, Arizona (the "Property") that was originally owned by the TWE Retirement Fund Trust (the "TWE Trust"). On October 4, 1995, William Eversole ("Eversole"), ostensibly acting as trustee of the TWE Trust, Whitehills Trust No. 13, granted Stephen Haight ("Haight") and Rocco Franzeo ("Franzeo") a 90–day option to purchase the Property in exchange for $4000. The written option agreement required Haight and Franzeo to pay $36,000 of the total price of $117,766.83 to "execute the option" by January 2, 1996 (the end of the option period), and make four more payments thereafter.

¶ 3 Haight and Franzeo did not pay the $36,000 necessary to execute the option until shortly after the January 2, 1996 deadline. Eversole accepted the $36,000 but failed to record any property interest in favor of Haight and Franzeo. Thereafter, Eversole orally offered to sell Haight shares in Whitehills Trust No. 13, which would give Haight the right to sell or dispose of any portion or all of the trust estate, including the Property.

¶ 4 Haight and Franzeo then hired attorney James Ream to pursue a damages claim against Eversole in state court in Clark County, Nevada, Eversole's place of residence. Ream filed an action for breach of contract and breach of the covenant of good faith and fair dealing on August 13, 1996. After securing personal jurisdiction over Eversole in Nevada, Ream obtained a favorable result in arbitration. The arbitrator ruled that Eversole, not the TWE Trust, had breached an oral agreement to provide an interest in Whitehills Trust No. 13, and awarded money damages to Haight and Franzeo, along with costs and sanctions. The arbitrator also found that the plaintiffs would have been entitled to specific performance.

¶ 5 Eversole subsequently moved for a trial de novo in Nevada on August 5, 1997. Meanwhile, the TWE Trust and Whitehills Trust transferred two parcels of the Property to third parties and five other parcels of the Property to the Linda L. Proctor Separate Property Trust (the "Proctor Trust"), of which Eversole's wife, Linda Proctor–Ever-

sole, was trustee. The Proctor Trust then sold the five parcels to third parties.

¶ 6 On April 27, 1998, Ream amended the complaint in Nevada state court to seek specific performance under the option agreement, and then, in his capacity as "Attorney for Plaintiffs," recorded a notice of lis pendens (the "first notice") with the Mohave County Recorder. Before filing the first notice, Ream secured permission from Franzeo, the primary beneficiary of the case proceeds and the party authorized to make controlling decisions in the case. Ream also consulted three attorneys, who assured him that the filing would be proper.

¶ 7 The first notice described the entire Property, but it failed to fully identify the parties and was notarized by Ream's wife, Amy Ream. Philip Whitaker, Eversole's attorney, demanded that Ream vacate the notice because it was "groundless," but Ream initially refused.

¶ 8 On August 5, 1998, Eversole and Proctor–Eversole filed suit on behalf of the two Trusts, which were determined by the trial court to be Eversole's alter-egos. That lawsuit was brought in Mohave County, Arizona under A.R.S. section 33–420, and alleged that the filing of the lis pendens in Arizona was groundless, that it violated certain technical requirements of A.R.S. section 12–1191, that the Nevada court lacked jurisdiction over the underlying action, and that the pending Nevada action did not concern title to real property. The suit named the Reams as the only defendants.

¶ 9 On August 18, 1998, Ream filed an amended notice of lis pendens (the "second notice") which was not notarized, although it correctly named the parties, included the Nevada action's case number, and described the entire Property. He then filed a motion for summary judgment on Eversole's lawsuit. The Arizona superior court subsequently entered an order granting this motion on June 17, 1999, implicitly concluding that the Nevada court had jurisdiction over the underlying action and dismissed the complaint with prejudice.

¶ 10 Earlier, on January 13, 1999, the Nevada district court had ruled that the property ownership issue was not before it since it would have "no jurisdiction" and that the only outstanding issue was enforcing the "contract for real property." Six days later, that court awarded $36,000 in damages to Haight and Franzeo on an unjust enrichment theory, finding that there was no evidence of an option agreement or any agreement to purchase shares of a trust.

## II.  DISCUSSION

### A.  Standard Of Review

¶ 11 On appeal from a summary judgment, we view the evidence in the light most favorable to the party against whom summary judgment was entered. See L. Harvey Concrete, Inc. v. Agro Constr. & Supply Co., 189 Ariz. 178, 180, 939 P.2d 811, 813 (1997). We must determine de novo whether any genuine issues of material fact exist and whether the trial court erred in its application of the law. Id. Likewise, we apply de novo review to the issue of subject matter jurisdiction. See Hughes v. Creighton, 165 Ariz. 265, 267, 798 P.2d 403, 405 (1990).

### B.  The Trial Court's Rulings

#### 1.  The Nevada District Court Had Subject Matter Jurisdiction Over The Amended Complaint For Specific Performance.

¶ 12 Eversole argues that the Nevada district court lacked subject matter jurisdiction over the amended complaint seeking specific performance of the option agreement. Specifically, he argues that the Nevada court had no power to affect title to real property in Arizona because it had no in rem jurisdiction over the property. Because "real estate is governed by the law of its situs," he further concludes that a notice of lis pendens filed in Arizona is not valid unless the action is pending in Arizona. We disagree.

#### a.  The Use Of Lis Pendens Is Not Limited To Traditional In Rem Proceedings

■ ¶ 13 According to A.R.S. section 12–1191(A) (1994), litigants "may file in the office of the recorder of the county in which the property is situated" a statutory notice of lis pendens in actions "affecting title to real

property." Use of lis pendens is not limited to traditional in rem proceedings. In personam actions may also affect property in a manner that justifies the filing of a notice of lis pendens. Indeed, one action that qualifies for the protection of a lis pendens in Arizona is a claim for specific performance to convey realty. *See Evergreen West, Inc. v. Boyd,* 167 Ariz. 614, 619, 810 P.2d 612, 617 (1991)(holding that a developer's complaint "seeking specific performance of [an] option agreement is clearly an action affecting title to real property").

■ ¶ 14 An in personam proceeding, brought in equity to determine the rights of individuals, may be filed in any court that has personal jurisdiction over the parties, even if the proceeding involves realty located in another state. As the United States Supreme Court has explained:

> *[A] court of equity, acting upon the person of the defendant may decree a conveyance of land situated in another jurisdiction, and even in a foreign country, and enforce the execution of the decree by process against the defendant; . . . .*
>
> . . . .
>
> *[B]y means of its power over the person of a party, a court of equity may in a proper case compel him to act in relation to property not within the jurisdiction, its decree does not operate directly upon the property nor affect the title, but it is made effectual through the coercion of the defendant;*
>
> . . . .

*Fall v. Eastin,* 215 U.S. 1, 9–10, 30 S.Ct. 3, 54 L.Ed. 65 (1909)(emphasis added); *accord Kennedy v. Morrow,* 77 Ariz. 152, 161–62, 268 P.2d 326, 333(1954)(explaining that "[w]hen equity has jurisdiction of the parties

it may adjudicate their interests in real property lying outside the territorial jurisdiction, and acting in personam, it will make such orders as the disposition of the case warrants" while using its contempt powers to enforce those orders); *see generally* Restatement (Second) of Conflict of Laws §§ 53, 55 (1971) (decrees affecting acts or things in other jurisdictions).

■ ¶ 15 Therefore, a court with personal jurisdiction over a Nevada party can compel that party "to act in relation to [Arizona] property," even though it cannot directly affect title to property lying outside its jurisdiction. *See Fall,* 215 U.S. at 10, 30 S.Ct. 3. Accordingly, the Nevada district court had subject matter jurisdiction over the claim for specific performance to compel Eversole to sell the Property to Haight and Franzeo.

■ ¶ 16 Furthermore, the filing of a notice of lis pendens in an extraterritorial court does not infringe upon Arizona's jurisdiction over real property within its territorial borders. Unlike a writ of attachment, a notice of lis pendens does not entail a clear assertion of the court's control over property either during or after the litigation.[1] In some circumstances, an attachment of property can establish jurisdiction over an action. *See* A.R.S. § 12–2402(A)(3)(1994)(a trial court may issue a provisional remedy before judgment and without prior notice when "required to obtain jurisdiction"). A lis pendens, however, can never affect jurisdiction. *See Kelly v. Perry,* 111 Ariz. 382, 384, 531 P.2d 139, 141 (1975) ("[The lis pendens statute] was adopted to provide an effective means of giving notice to parties interested in land and is not a restriction on the jurisdiction of the Superior Court.").[2]

---

1. *Compare* A.R.S. § 12–2402(B)(1994)(attachment without notice requires a moving party to establish by affidavit facts supporting its claim to the satisfaction of the court) *and* A.R.S. § 12–2403(1–3)(1994)(attachment with notice is obtained by a formal procedure, reviewed by an officer of the court, and requires notice and an opportunity to be heard) *with* A.R.S. § 12–1191(A–B)(lis pendens procedures do not require judicial control or approval).

2. Appellants cite a number of cases in support of their jurisdictional arguments, but their reliance

on these authorities is misplaced. Two of these cases were actions to quiet title, and consequently, the respective courts were required to have in rem jurisdiction. *See Porter v. Porter,* 101 Ariz. 131, 138, 416 P.2d 564, 571 (1966), *cert. denied,* 386 U.S. 957, 87 S.Ct. 1028, 18 L.Ed.2d 107 (1967); *Snow v. Kennedy,* 36 Ariz. 475, 486, 286 P. 930, 934 (1930). The discussion in these cases is irrelevant to in personam actions such as this one. Moreover, the holding in *Noble v. Noble,* 26 Ariz.App. 89, 546 P.2d 358 (1976), actually *undercuts* Appellants' argument. In that case, this court held that it had equitable jurisdiction to

b. *Permitting Claimants To Record No-tices Of Lis Pendens In Connection With Extraterritorial Actions Fur-thers The Objective Of The Lis Pen-dens Statutes.*

¶ 17 Equally unavailing is Appel-lants' argument that Ream, on behalf of his clients, improperly recorded a lis pendens in Arizona. The applicable Arizona statutes no-where prohibit the filing of a lis pendens in connection with an extraterritorial action af-fecting Arizona real property. According to A.R.S. section 12–1191(A), a party to "an action affecting title to real property . . . may file in the office of the recorder of the county in which the property is situated a notice of the pendency of the action or defense." This language does not limit the filing based upon the location of the action. Likewise, A.R.S. section 33–420 (2000) contains no such re-strictions.

¶ 18 The objective of Arizona's lis pendens doctrine is to prevent the frustration of judgments and decrees by pendente lite transfers of property interests. The extra-territorial use of lis pendens furthers this goal. Without the use of a lis pendens, the interests of property owners and prospective purchasers would be protected to the detri-ment of claimants in non-situs actions. The availability of an extraterritorial lis pendens restores the balance of interests among these parties by protecting claimants while afford-ing more complete information to prospective purchasers. *See Winters v. Schulman,* 977

P.2d 1218, 1222–23 (Utah Ct.App.1999) (hold-ing that a lis pendens could be filed against Utah property in connection with out-of-state proceedings and stating that this approach affords greater protection to purchasers by informing them of all actions pending, not just those in Utah); *see generally* Gail M. Hashimoto, Note, *The Protection of Land Decrees: The Use of Lis Pendens in Inter-state Litigation Affecting California Real Property,* 36 Hastings L.J. 255, 267–68 (Nov. 1984). Although this approach may slightly diminish property owners' interests by in-creasing the risk of groundless lis pendens filings, owners will still be able to obtain redress in Arizona courts through A.R.S. sec-tion 33–420 when such filings are proven to be groundless.

2. *The Notices Of Lis Pendens Were Not Groundless And Contained No Mate-rial Misstatements Of Fact Within The Meaning Of A.R.S. §§ 12–1191 And 33–420.*

¶ 19 Appellants further argue that certain technical defects in the first and second no-tices filed by Ream violated A.R.S. section 33–420(C), which imposes liability upon a person named in a document that purports to create an interest in, or a lien or encum-brance against, real property, who knows that the document is "forged, groundless, contains a material misstatement or false claim or is otherwise invalid." [3] Appellants base this argument on the fact that Ream signed the lis pendens as "Attorney for

determine the respective interests of two spouses in real property located in Denmark. 26 Ariz. App. at 92, 546 P.2d at 361.

Appellants' reliance upon A.R.S. section 12–401(12) (1992) is also misplaced. According to that statute, venue lies in the county where the real property or a part thereof is located, if the action concerns the property. Although Franzeo and Haight did not file suit in Mohave County, the record does not reflect that Appellants ever objected to their choice of venue. Appellants thus have waived the right to assert a venue argument in their reply brief. *See* Ariz. R. Civ. P. 12(b)(3). In any event, a defect in venue does not deprive a court of jurisdiction, and Appel-lants' argument fails. *See Massengill v. Superior Ct.,* 3 Ariz.App. 588, 591, 416 P.2d 1009, 1012 (1966) (filing an action in the wrong county is not a fatal jurisdictional defect but is a venue problem that must be raised in a timely manner).

3. Appellants erroneously assert that A.R.S sec-tion 33–420(A) also applies to this case and pro-vides a right of action against Appellees. To prevail under A.R.S. section 33–420(A), the plain-tiff must show that a defendant (1) has caused a document to be recorded, (2) in which he claims an interest in, or a lien or encumbrance against, real property, (3) while knowing that the docu-ment is forged, groundless, contains a material misstatement or false claim or is otherwise inval-id. Because Ream filed the first and second notices in his capacity as "Attorney for Plain-tiffs," he clearly did not claim an interest in the Property. Accordingly, this provision does not apply. Moreover, our supreme court has deter-mined that the statute "imposes liability on the *claimant* (*i.e.,* the client instead of the lawyer) for causing the filing of a lis pendens. . . ." *Wyatt v. Wehmueller,* 167 Ariz. 281, 284, 806 P.2d 870, 873 (1991)(emphasis added).

Plaintiffs," as well as on his failure to fully identify the parties in the Nevada action, and his identification of the entire Property, including parcels that had been previously transferred. We find no merit in these assertions and affirm.

¶ 20 *Ream's Signature.* Appellants first contend that only "the plaintiff or a defendant of an action" is authorized to file a notice of lis pendens under A.R.S. section 12–1191. The statute, however, does not preclude attorneys like Ream from filing notices on behalf of clients. On both notices, Ream identified himself as "Attorney for Plaintiffs." Ream's signature does not suggest that he had a personal interest in the Property. We find no fault with this aspect of the notices, and accordingly affirm the trial court's holding.

¶ 21 *The Parties Identified.* We are also unpersuaded by Appellants' argument that Ream should be personally liable for failing to fully identify the parties to the lawsuit in the first notice. This document did not include the names of Franzeo, Haight, or the Nevada case, and identified Eversole without mentioning his status as trustee of the TWE Trust. It did, however, include the name of the Nevada court where the action was pending, the nature of the action, Eversole's name and Ream's telephone number. We believe that, taken as a whole, the first notice provided adequate notice of the Nevada litigation, and therefore any omissions were not material.

¶ 22 *The Legal Description.* Appellants' complaint that the Property's legal description included parcels that "undisputedly had been sold to bona fide purchasers" also lacks merit. Any cause of action concerning an overly broad legal description accrues in the new titleholder, not the original titleholder. *See Tucson Estates, Inc. v. Superior Ct. (Homeowners' Ass'n of Tucson Estates),* 151 Ariz. 600, 606 n. 2, 729 P.2d 954, 960 n. 2 (1986) (holding that the petitioner "is not a proper party to challenge the validity of the notice [of lis pendens] as to lots within Tucson Estates II which it has previously conveyed"). As the original titleholder, Eversole lacks standing to raise these issues with respect to real property he claims is owned by other parties.

3. *The Nevada Plaintiffs Presented A Credible Claim For Specific Performance Of The Contract.*

¶ 23 Finally, Appellants argue that the notices were groundless because the Nevada plaintiffs, Haight and Franzeo, did not present a credible specific performance claim, and did not prevail on the merits. We disagree.

¶ 24 In *Evergreen West, Inc. v. Boyd,* a claimant argued that a lis pendens was groundless because there was no meeting of the minds or writing sufficient to form a binding modification of the relevant option agreements. 167 Ariz. 614, 619, 810 P.2d 612, 617. This court reasoned that A.R.S. section 12–1191(A) authorizes a lis pendens filing in any action "affecting title to real property." Therefore, courts must examine whether there is some basis for concluding that the action meets this definition, and need not—indeed, should not—determine the merits unless such a determination is necessary to the decision. *Id.* at 620, 810 P.2d at 618. In *Evergreen West,* the real estate developer who recorded the lis pendens was the optionee under an agreement executed by the former owner of the parcel, and was seeking specific performance of the option agreement. *Id.* at 621, 810 P.2d at 619. In light of the arguable basis for the claim, the court concluded that the lis pendens claim was not groundless. *Id.* at 621–23, 810 P.2d at 619–21.

¶ 25 Although Haight and Franzeo did not ultimately succeed on the merits with respect to the specific performance claim in the Nevada court, that fact is not dispositive. Instead, the question is whether some basis existed for concluding that the action affected title to real property. As in *Evergreen West,* the record confirms that Haight and Franzeo agreed to purchase the Property from Eversole under the option agreement. Although they failed to timely pay the $36,000 required to execute the option agreement, Haight and Franzeo contended that Eversole waived the 90–day term by later

accepting and keeping the funds. Thereafter, the Nevada arbitrator concluded that Haight and Franzeo were entitled to specific performance (or the return of their payments). The Nevada court later ruled on Haight and Franzeo's amended complaint for specific performance. Based upon these facts, we affirm the trial court's conclusion that the lis pendens was filed in an action affecting title to real property and was not groundless.

¶ 26 Alternatively, we affirm on the ground that Ream did not knowingly file a wrongful lis pendens. Before filing the first notice, Ream obtained advice from three attorneys who agreed that filing such a notice was appropriate. After receiving the wrongful lis pendens complaint on August 17, 1998, Ream corrected the deficiencies in the first notice, and recorded the second notice on the following day. He thereby satisfied the requirement that corrections be made within twenty days from a written request. *See* A.R.S. § 33–420(C). Based upon these facts, and the absence of record evidence to the contrary, the trial court correctly concluded that Ream had not knowingly filed an unlawful lis pendens.

### III. CONCLUSION

¶ 27 We affirm the trial court's grant of summary judgment to Appellees.

CONCURRING: SUSAN A. EHRLICH, Presiding Judge, and JON W. THOMPSON, Judge.