In re Steve KERNS, Plaintiff,

v.

Sok Sun KERNS; John Hoehne; Karl Hoehne; Hoehne Bros., a Minnesota general partnership; Ray–Paul, Inc., a Colorado corporation; and John Does, Defendants.

No. 02SA59.

Supreme Court of Colorado.

May 28, 2002.

Howard and Francis, LLP, Steven G. Francis, Fort Collins, Colorado, Attorneys for Plaintiff.

Grimshaw & Harring, P.C., Lisa Mayers, Denver, Colorado, Attorneys for Defendants John Hoehne, Karl Hoehne and Hoehne Bros.

Bostrom, Sands and Sander, P.C., Jon F. Sands, Denver, Colorado, Attorneys for Defendant Ray–Paul, Inc.

Justice RICE delivered the Opinion of the Court.

In this original action, we issued a rule to show cause why the order of the District Court of Larimer County should not be vacated. The district court held that a party seeking to impose a constructive trust on real property located in Colorado is not entitled to file a notice of lis pendens under section 38–35–110, 10 C.R.S. (2001), because the action was brought in an out-of-state court without in rem jurisdiction over the property. Pursuant to the plain meaning of the statute, we hold that the procedure for filing a notice of lis pendens set forth in section 38–35–110 is available to a party in any action "wherein relief is claimed affecting the title to real property," regardless of the jurisdiction in which the action is brought. § 38–35–110(1), 10 C.R.S. (2001). Whether relief is claimed that affects title to real property depends on the facts of each case, not on whether or not the action is in rem. The constructive trust sought in the out-of-state action at issue in this case affects title to real property in Colorado. Accordingly, we now make the rule absolute.

## I. FACTS AND PROCEDURAL HISTORY

■ Petitioners, John Hoehne, Karl Hoehne, and the Hoehne Bros., a Minnesota General Partnership (collectively "the Hoehnes") filed an action in the United

States District Court for the District of Minnesota against Respondent, Steve Kerns, alleging fraud, breach of fiduciary duty, violation of the Minnesota Consumer Fraud Act, conversion, and constructive trust.[1] Petitioners are elk farmers from Pine Island, Minnesota. They claim that Respondent defrauded them out of more than six million dollars over the course of several years.

According to the complaint, Respondent represented to Petitioners that, on their behalf, he had contracted with the states of Montana, Idaho, Oregon, and Washington to manage free-range elk from overpopulated areas in those states. Purportedly, the states had agreed to provide a minimum of 2500 elk a year, pay a per diem handling fee, and reimburse Petitioners for the purchase of land and construction of improvements necessary to manage the elk. Believing this to be a legitimate and sound business proposition, and relying on Respondent's knowledge of and connections in the industry, Petitioners agreed to supply the facilities necessary to manage and dispose of elk sent to them from each of the states. Accordingly, Petitioners provided Respondent with funds to buy and improve various ranches in Idaho, Colorado, and Montana as well as with "good faith" cash deposits that Respondent had said the states required to assure performance.

Allegedly, Respondent eventually confessed that the entire venture was a sham. As a result, Petitioners filed the Minnesota action to impose a constructive trust upon the various ranch facilities for the purpose of retitling these properties in Petitioners' name. In addition, Petitioners seek to recover all funds deposited in banks by Respondent on Petitioners' behalf for ranch operations and good faith deposits under the purported agreement.

Two of the ranch facilities on which Petitioners are seeking to impose a constructive trust in the Minnesota action are located in Colorado. They are: (a) a 187–acre farm parcel with a house and lot at 5380 North County Road 9, Fort Collins, Colorado (the "Dilo Parcel"); and (b) a house at 350 Turman Drive, Fort Collins, Colorado (the "Turman Drive Parcel"). To protect Petitioners' alleged interest in these parcels during the pendency of the Minnesota action, Petitioners' counsel of record in the Minnesota action filed a notice of lis pendens against each of these parcels in the Larimer County Recorder's Office on November 17, 2000. The notice of lis pendens against the Turman Drive Parcel was recorded on November 21, 2000. The notice of lis pendens against the Dilo Parcel, however, was not recorded until August 17th, 2001. When Petitioners learned that the Dilo Parcel had been replatted and subdivided, they filed two additional notices of lis pendens containing the legal descriptions of the subdivision for additional protection. These notices were recorded on August 20, 2001.

On August 17th, 2001, Respondent deeded a substantial portion of the Dilo Parcel to Ray–Paul, Inc. Ray–Paul, Inc. executed a deed of trust in favor of Respondent on that same day. The warranty deed and the deed of trust were not recorded until September 7, 2001. On August 20, 2001, Respondent executed a warranty deed for another portion of the Dilo Parcel in favor of his wife. Seven days later she deeded it back to herself and her husband as "tenants by the entireties." These documents were recorded on August 21, 2001 and August 28, 2001, respectively. Respondent has agreed to sell the remainder of the Dilo Parcel to Raymond and Linda Olick. That transaction, however, is not scheduled to close until September 1, 2002.

The Federal District Court for the District of Minnesota granted a temporary restraining order on October 26, 2001 and then entered a preliminary injunction on November

---

1. We draw the facts underlying the Minnesota action from the complaint filed therein, as only these allegations are relevant to our inquiry here. *See Winters v. Schulman,* 977 P.2d 1218, 1223 (Utah Ct.App.1999) ("In determining the validity of a lis pendens, courts have generally restricted their review to the face of the complaint."); *Ross v. Specialty Risk Consultants, Inc.,* 240 Wis.2d 23, 621 N.W.2d 669, 677 (Ct.App.2000) ("[T]he propriety of a Lis Pendens must stand on the allegations in the pleadings."); *see also S. Utsunomiya Enters. v. Moomuku Country Club,* 75 Haw. 480, 866 P.2d 951, 964 (1994); *Polk v. Schwartz,* 166 N.J.Super. 292, 399 A.2d 1001, 1004–05 (1979).

2, 2001 barring Respondent and anyone with whom he is in privity from transferring the Dilo Parcel, the Turman Drive Parcel, and two Idaho parcels while the Minnesota action is pending. At the federal trial judge's suggestion, Respondent then filed an action in Larimer County District Court to quiet title to the Dilo Parcel, naming Petitioners, Ray–Paul, Inc., and his wife as defendants. Before the Larimer County District Court, Respondent argued that section 38–35–110, does not permit a notice of lis pendens to be recorded unless the action to which it refers is pending in the State of Colorado. Accordingly, Respondent requested that the Larimer County District Court declare the lis pendens recorded against the Dilo Parcel invalid. In addition, Respondent argued that the notices of lis pendens filed against the Dilo Parcel were spurious liens or documents within the meaning of section 38–35–201, 10 C.R.S. (2001).[2]

On February 4, 2002, the district court issued a minute order that the lis pendens notices recorded against the Dilo Parcel were invalid, stating:

> The federal court may have jurisdiction to declare a constructive trust but it has no in rem jurisdiction over the Colorado property. Accordingly, the Court orders the Hoehne Defendants to dismiss the lis pendens filed against the property that is the subject of this action within fifteen days.

We issued a rule to show cause why the district court's order should not be vacated; we now make that rule absolute.

## II. ANALYSIS

The only issue before us is whether a party to an out-of-state action seeking to impose a constructive trust on real property located in Colorado is entitled to file a notice of lis pendens under section 38–35–110.

---

**2.** Respondent expends much effort in their brief before this court arguing that the August 17, 2001 lis pendens recorded against the Dilo Parcel is a spurious document and therefore must be declared invalid by the Larimer County District court pursuant to section 38–35–204, 10 C.R.S. (2001). This issue is not properly before us, and we pass no judgment upon it.

## A. Section 38–35–110 Applies to Extraterritorial Actions Affecting Title To Real Property

■ Our primary task in construing a statute is to give effect to the legislative purpose underlying the enactment. *Shapiro & Meinhold v. Zartman,* 823 P.2d 120, 123 (Colo.1992). In discerning legislative intent, we look first to the statutory language itself, giving words and phrases their commonly accepted and understood meaning. *Id.; Farmers Group, Inc. v. Williams,* 805 P.2d 419, 422 (Colo.1991). If the language of a statute is plain, its meaning is clear, and the intent of the General Assembly may be discerned with reasonable certainty, the statute must be applied as written. *McKinney v. Kautzky,* 801 P.2d 508, 509 (Colo.1990).

Section 38–35–110(1) provides in relevant part:

> After filing any pleading in an action wherein relief is claimed affecting title to real property, any party to such action may record in the office of the county clerk and recorder in the county or counties in which the real property or any portion thereof is situated a notice of lis pendens containing the name of the court where such action is pending, the names of the parties to such action at the time of such recording, and a legal description of the real property.

§ 38–35–110(1).

■ The plain language of section 38–35–110 permits a party in any action wherein relief is claimed "affecting title to real property" to file a notice of lis pendens in the county where the Colorado real estate is located. *See Alien, Inc. v. Futterman,* 924 P.2d 1063, 1070 (Colo.App.1995). Thus, the jurisdiction in which the action is brought has no relevance under the statute;[3] in fact,

---

**3.** In addition to the action to quiet title brought in the Larimer County District Court, Respondent also filed a motion in the Minnesota action requesting that the court declare notices of lis pendens filed by Petitioners against the Idaho ranch facilities null and void. The court denied this motion. *Hoehne v. Kerns,* No. 00CV–2544 (D.Minn. Aug. 2, 2001) (order denying Defendant's Motion for Removal of Lis Pendens from Defendant's Property and Declare Said Lis [Pen-

the only prerequisite imposed on the action to which the notice of lis pendens pertains is that it be one "affecting title to real property."

Permitting an out-of-state claimant to file a notice of lis pendens in accordance with the plain language of section 38–35–110 is also consistent with the legislative purpose in enacting the statute. In *Hammersley v. District Court*, 199 Colo. 442, 610 P.2d 94 (1980), we explained that section 38–35–110 was enacted to assuage the harsh effects of the common-law doctrine of lis pendens. *Hammersley*, 610 P.2d at 95–96; *see also Crown Life Ins. Co. v. April Corp.*, 855 P.2d 12, 14 (Colo.App.1992). At common law, purchasers acquiring an interest in property that was the subject of a lawsuit—historically deemed purchasers pendente lite—were "conclusively bound by the result of the litigation and their interest in the real property was subject to the litigants' rights as finally determined by the court." *Belleville State Bank v. Steele*, 117 Wis.2d 563, 345 N.W.2d 405, 410 (1984); *accord Hammersley*, 610 P.2d at 95. This was true regardless of whether they had actual notice of the litigation because "the pendency of judicial proceedings was presumed to be of such notoriety that commencement of judicial proceedings was considered constructive notice to pendente lite purchasers." *Belleville State Bank*, 345 N.W.2d at 409; Gail M. Hashimoto, *Note: The Protection of Land Decrees: The Use of Lis Pendens in Interstate Litigation Affecting California Real Property*, 36 Hastings L.J. 255, 258–59 (1984). The severe and sometimes inequitable consequences of this common-law rule caused courts to judicially limit its application: only if the action operated directly on title and the property was located in the territorial jurisdiction of the court where the suit was pending were purchasers bound by the outcome of the litigation. *Hammersley*,

610 P.2d at 96; *Belleville State Bank*, 345 N.W.2d at 410.

By integrating the lis pendens doctrine into the recording system, section 38–35–110 tempers the harsh effects of the common-law doctrine without the need for the common-law restrictions. Unlike at common law, anyone acquiring an interest in the property during the pendency of the litigation will be bound by its outcome so long as a notice of lis pendens has been recorded in the office of the county clerk and recorder where the property is located in accordance with section 38–35–110.[4] *James H. Moore & Assoc. Realty, Inc. v. Arrowhead at Vail*, 892 P.2d 367, 373–74 (Colo.App.1994); *accord King v. W.R. Hall Transp. & Storage Co.*, 641 P.2d 916, 921 (Colo.1982).

This recording requirement serves two purposes. First, it provides prospective purchasers and encumbrancers easier access to actual notice of court proceedings affecting property. 14 Richard R. Powell, *Powell on Real Property* § 82A.01[3], at 82A–7 (2000). A prospective purchaser or encumbrancer need only look in the office of the clerk and recorder in the county where the land is situated to determine if there is any pending litigation affecting the title to the land. *See Belleville State Bank*, 345 N.W.2d at 411. Second, the pendency of the action itself no longer serves as constructive notice to prospective purchasers or encumbrancers. Pursuant to section 38–35–110, a claimant must record a notice of lis pendens if he wishes to preserve his contingent interest against those who purchase or encumber the property while the lawsuit is pending. *Id.* Thus, section 38–35–110 itself "effectively eliminate[s] the problem of surprise," *Hammersley*, 610 P.2d at 96, and obviates the need for the common-law restrictions. Therefore, there is no sound justification for limiting the statute's applicability to actions pending in the jurisdiction where the proper-

dens] Null and Void and of No Effect). It reasoned that the Idaho lis pendens statute, Idaho Code § 5–505, (Michie 2001), was "devoid of any language excluding courts of foreign jurisdiction from effecting lis pendens notices within the State of Idaho." *Id.* Therefore, the court held that the notices of lis pendens filed against the Idaho properties were valid. *Id.*

4. Of course, just as at common law, anyone acquiring an interest in the property with actual notice of pending litigation that potentially affects title to the property will be bound by the outcome of such litigation.

ty is located or to actions that operate directly upon title. *Belleville State Bank,* 345 N.W.2d at 411; *Winters,* 977 P.2d at 1222–23 (Utah Ct.App.1999); *TWE Retirement Fund Trust v. Ream,* 198 Ariz. 268, 8 P.3d 1182, 1187 (Ct.App.2000); Robby Alden, *Note: Modernizing the Situs Rule for Real Property Conflicts,* 65 Tex. L. Rev. 585, 593 (1987) (reasoning that "[t]here is no reason ... for statutory lis pendens, in contrast to common law lis pendens, to be limited to the territorial jurisdiction of the situs because constructive notice does not arise unless a lis pendens is actually recorded, and thus a prospective purchaser need look only in the office of the register of deeds in the county in which the land is situated" to determine whether a lawsuit affecting title is pending in another jurisdiction); *see generally* Hashimoto, *supra; cf. Alien, Inc.,* 924 P.2d at 1070 ("[W]e perceive no rationale for distinguishing between a suit affecting title to real property which is brought in state court from one brought in federal court with respect to the recording of a notice of lis pendens.").

■ Permitting an out-of-state claimant to file a notice of lis pendens furthers the policies behind the act as well. In addition to protecting the out-of-state claimant's interest in the subject property, subjugating pendente lite purchasers' interest in the property to the litigants rights' as finally determined by the court, promotes "the finality of litigation and economy of judicial resources." *Hammersley,* 610 P.2d at 96. Once a notice of lis pendens has been properly recorded, the judgment of the court cannot be frustrated by alienation of the property to a third party not bound by the outcome of the litigation. *Hammersley,* 610 P.2d at 96 ("The policy that successful completion of a suit involving rights in real property should not be thwarted by permitting transfers of interest in real property to persons not bound by the outcome of the suit continues in its full vigor."); *Belleville State Bank,* 345 N.W.2d at 409 ("If property which was the subject of litigation could be alienated, the court's exercise of jurisdiction would be frustrated and litigants would be forced into an unending series of lawsuits against persons acquiring the property during litigation."); *see also James H. Moore & Assoc. Realty,*

*Inc.,* 892 P.2d at 374; *Alien, Inc.,* 924 P.2d at 1070. Promoting the finality of litigation and economy of judicial resources is important whether the litigation and the resources are in Colorado or elsewhere.

Furthermore, allowing out-of-state claimants to file a notice of lis pendens under section 38–35–110 furthers the policy of protecting prospective purchasers. Unlike at common law, prospective purchasers can readily determine whether a judicial proceeding—local or otherwise—potentially affects title to a piece of property simply by visiting the county clerk and recorder's office in the county where the property is located. *Bankers Trust Co. v. El Paso Pre–Cast Co.,* 192 Colo. 468, 475, 560 P.2d 457, 462 (1977); *Belleville State Bank,* 345 N.W.2d at 411. Once there, he need only conduct a standard title search—as any prudent buyer would do—to discern whether the property is the subject of litigation anywhere in the world. Without a rule permitting out-of-state litigants to avail themselves of the procedures set forth in section 38–35–110, those interested in purchasing Colorado real estate would be unaware of an extraterritorial proceeding potentially affecting the property's title. *See Belleville State Bank,* 345 N.W.2d at 411 (holding that the lis pendens statute has "the additional objective of giving prospective purchasers and encumbrancers notice of pending actions so that they may avoid buying a lawsuit" (internal quotation marks omitted)); Alden, *supra* at 593 ("Would-be purchasers would not be responsible for searching all the courts of the nation to verify the full alienability of the land."). Thus, just as it prevents the title-holder from colluding with a third party to thwart a judicial proceeding, a duly recorded notice of lis pendens also prevents him from unscrupulously foisting the property upon an innocent purchaser.

Although it may be more difficult for prospective purchasers of real property in Colorado to determine the status or validity of an action in a court outside this state, this inconvenience is outweighed by the greater protection afforded them:

Allowing a lis pendens to be filed in [Colorado] when the action is pending in anoth-

er state actually provides prospective purchasers of real property in [Colorado] with more protection than if a lis pendens could only be filed in connection with an action commenced in [Colorado]. Applying [section 38–35–110] to out-of-state judicial proceedings provides prospective purchasers with notice of all actions that may affect the property, not just those pending in [Colorado].

*Winters,* 977 P.2d at 1222–23; *see also Belleville State Bank,* 345 N.W.2d at 411.

In sum, whereas denying an out-of-state claimant the opportunity to file a notice of lis pendens would unjustifiably protect the interests of property owners and prospective purchasers at the expense of claimants in extraterritorial actions, integrating the lis pendens doctrine into the overall recording scheme and permitting out-of-state claimants to file a notice of lis pendens under section 38–35–110 "restores the balance of interests" among these parties. *TWE Retirement Fund Trust,* 8 P.3d at 1187; Hashimoto, *supra,* at 279–80. Thus, we hold that a party to an out-of-state action affecting title to real property in Colorado is entitled to file a notice of lis pendens under section 38–35–110.

## B. An Extraterritorial Action To Impose A Constructive Trust On Colorado Real Estate Is an Action "Affecting Title To Real Property" Within the Meaning of Section 38–35–110

Having concluded that a party to an out-of-state action affecting title to real property in Colorado is entitled to file a notice of lis pendens under section 38–35–110, we are left with the remaining question of whether the Minnesota action is actually one "affecting title to real property." We hold that it is.

Principles of state sovereignty dictate the rule that the courts of one state have no power to directly affect title to land located wholly within the borders of another.

*Fall v. Eastin,* 215 U.S. 1, 11–12, 30 S.Ct. 3, 54 L.Ed. 65 (1909); *see also Flader v. Campbell,* 120 Colo. 66, 76, 207 P.2d 1188, 1193 (1949) ("It seems clear that the question of ownership of lands located within the state is a matter to be determined by the Colorado courts ...."); Hashimoto, *supra,* at 264 ("The limitation on a court's ability to affect land outside its territorial jurisdiction 'is an ancient one and represents the view when the common law of England quite naturally looked with distrust upon any effort of a foreign power to dictate with respect to English land.'" (quoting Byron R. Bentley, *Equity Decrees in Sister States,* 8 S. Cal. L. Rev. 1, 9 (1934))). In short, the usual case requires that in rem proceedings be brought in the jurisdiction where the land is situated.[5] Thus, if section 38–35–110's applicability were limited to in rem proceedings, an extraterritorial action would almost never "affect" title within the meaning of the statute. But it is not so limited.

As we have already explained, "Such a limitation is no longer necessary in Colorado because of the ... rule that a notice of lis pendens describing the parties and the property must be filed in the office of the county clerk and recorder in order to give constructive notice of the pending action." *Hammersley,* 610 P.2d at 96; *see also TWE Retirement Fund Trust,* 8 P.3d at 1186 (holding that the filing of a notice of lis pendens pertaining to an extraterritorial action does not infringe upon Arizona's jurisdiction over real property within its territorial borders); Hashimoto, *supra,* at 268 (arguing that because a notice of lis pendens recorded in relation to an extraterritorial action that indirectly affects real property does not create, transfer, or vest title or interests in realty, it "does not affect title in a manner that violates the territorial sovereignty of the situs state"). In addition, *Hammersley* instructs that the policies behind the statute "would be furthered by giving an expansive interpretation to the language 'affecting the title to real

5. *But cf. Kaiser Steel Corp. v. Frates,* 80 B.R. 216, 219–21 (Bankr.D.Colo.1987) (reasoning that the jurisdictional grant of federal bankruptcy courts provides an exception to the rule that that subject matter jurisdiction over real property is generally limited to courts within the same state as that of the res and therefore holding that California's lis pendens statute permits a party to an action before the United States Bankruptcy Court for the District of Colorado to file a notice of lis pendens against California property).

property' as found in section 38–35–110." [6] *Hammersley*, 610 P.2d at 96. Thus, even litigation that does not seek to change ownership in any way but does "involve a determination of certain rights [and liabilities] incident to ownership" falls within the purview of the statute. Accordingly, we hold that section 38–35–110's applicability is not limited to in rem proceedings.[7] *Id.; Crown Life Ins. Co. v. April Corp.*, 855 P.2d 12, 14–15 (Colo.App.1992) (holding that a creditor seeking to set aside a conveyance of real property as fraudulent may file a notice of lis pendens against such property under section 38–35–110); *Cooper v. Flagstaff Realty*, 634 P.2d 1013, 1015 (Colo.App.1981) (holding that litigation of a promise to grant a deed of trust to a specific parcel of real property affects title within the meaning of section 38–35–110 even though it does not seek to change ownership in any way because it does involve a determination of certain rights and liabilities incident to ownership); *see also TWE Retirement Fund Trust*, 8 P.3d at 1186; Hashimoto, *supra*, at 256.

■ In personam actions may also "affect" title within the meaning of the statute. *Id.* In *Fall v. Eastin*, 215 U.S. 1, 30 S.Ct. 3, 54 L.Ed. 65 (1909), the United States Supreme Court clarified that:

The territorial limitation of the jurisdiction of courts of a State over property in another State has a limited exception in the jurisdiction of a court of equity, but it is an exception well defined. A court of equity having authority to act upon the person may ... decree a conveyance of land situated in another jurisdiction, and even in a foreign country, and enforce the execution of the decree by process against the defendant ... [I]ts decree is made effectual through the coercion of the defendant.

*Fall*, 215 U.S. at 8, 9–10, 30 S.Ct. 3; *see also Hallaba v. Worldcom Network Servs. Inc.*, 196 F.R.D. 630, 650 (N.D.Okla.2000) ("This Court can clearly render decisions that "affect" the real estate title records in state court, such as, for example, deciding to set aside a fraudulent conveyance."); *Andre v. Morrow*, 106 Idaho 455, 680 P.2d 1355, 1361 n. 2 (1984) (holding that "a foreign court has the power to *indirectly* affect out-of-state property by means of a decree based on personal jurisdiction over the parties, which determines the parties' personal rights or equities in that property" and citing cases in support of that proposition).

An equitable action to impose a constructive trust on real property does not operate directly upon title but is a type of in person-

---

**6.** We acknowledge that there are serious consequences flowing from the filing of a notice of lis pendens. Once a lis pendens is filed, it renders title unmarketable and therefor effectively prevents the property's transfer until the litigation is resolved or the lis pendens is expunged. However, it is still only a notice. Unlike a lien, "no new interest is created by the existence of a lis pendens notice." 14 Powell, *supra*, § 82A.01[1], at 82A–4; *see also Alien Inc.*, 924 P.2d at 1070. As we explained in *Hammersley:*

This means only that a subsequent purchaser will be bound by the outcome of the litigation and that the purchase may be discouraged until that outcome is certain. No unfairness to the owner or to the subsequent purchaser is perceived in binding them both by the judgment in the pending action. The petitioner[ ][has] a legitimate interest in obtaining a final resolution of the questions in litigation.

610 P.2d at 97. Nevertheless, given the relative ease with which a notice of lis pendens can be recorded, courts must be vigilant in ensuring that the requirements of the statute have been met. Moreover, if a notice of lis pendens is improperly recorded, we note that section 38–35–204, 10 C.R.S. (2001) authorizes an action to expunge a "spurious" notice of lis pendens, and

award the costs and attorneys fees associated with such an action to the prevailing party. § 38–35–204(1) & (2). In addition, we have held that in the appropriate case, the filing of notice of lis pendens may be actionable as malicious prosecution. *See Westfield Dev. Co. v. Rifle Inv. Assocs.*, 786 P.2d 1112, 1118 (Colo.1990).

**7.** This is our principal point of difference with the Wyoming Supreme Court's opinion in *Ludvik v. James S. Jackson Co.*, 635 P.2d 1135 (Wyo. 1981). In *Ludvik*, the Wyoming Supreme Court held that its lis pendens statute codified the common law. 635 P.2d at 1141. Thus, in accordance with the common law, it reasoned that a notice of lis pendens could only be filed when the action to which it pertained is brought before a court having jurisdiction over the res. *Id.* Because an extraterritorial court cannot proceed in rem against Wyoming real estate, the court held the Wyoming lis pendens statute did not permit the filing of such notice where the underlying action was pending outside the state. *Id.* In contrast to *Ludvik, Hammersley* made clear that our lis pendens statute "modifies or restricts" the common-law doctrine of lis pendens on this point and is therefore not so restrictive in its application.

am action that may "ultimately change legal title." *Ross*, 621 N.W.2d at 676; *see also Mandley v. Backer*, 121 F.2d 875, 876 (D.C.Cir.1941) (holding that a court has the power to fashion an equitable decree enforcing a constructive trust on property located outside the jurisdiction (relying on *Massie v. Watts*, 10 U.S. (6 Cranch) 148, 3 L.Ed. 181 (1810))); *cf. Keller v. Millice*, 838 F.Supp. 1163, 1174 (S.D.Tex.1993) (holding that an action seeking to impose a constructive trust is transitory). In *In re Marriage of Allen*, 724 P.2d 651 (Colo.1986), we discussed the concept of a constructive trust:

> The constructive trust is an equitable device used to compel one who unfairly holds a property interest to convey that interest to another to whom it belongs. When property has been acquired in such circumstances that the holder of legal title may not in good conscience retain the beneficial interest, equity converts him into a trustee. The successful plaintiff in a constructive trust action wins an in personam order that requires the defendant, the constructive trustee, to transfer specific property in some form to the plaintiff, the beneficiary, of the trust.

724 P.2d at 656–57 (internal quotation marks and citations omitted). Thus, an action to impose a constructive trust has the potential to "affect" title to real property, albeit indirectly.

▮ Given *Hammersley's* mandate to broadly interpret the phrase "affecting the title to real property," we hold that an action to impose a constructive trust on real property located within the state of Colorado, entitles the party bringing the action to file a notice of lis pendens against that property in accordance with section 38–35–110. *See Polk v. Schwartz*, 399 A.2d at 1004 ("There is no doubt that an action to impress a constructive trust on realty affects title to that property, so that a notice of lis pendens may be filed under a statute such as ours."); *Ross*, 621 N.W.2d at 676 (holding that a party to an out-of-state action to impose a constructive trust on Wisconsin real estate is entitled to file a notice of lis pendens under Wisconsin's lis pendens statute); *see also* Powell, *supra*, at 82A–16; Hashimoto, *supra* at 256; *cf. Hawthorne Trust v. Maine Sav. Bank*, 136 N.H. 533, 618 A.2d 828, 830–31 (1992) (hold-

ing that an equitable interest in real estate is within the purview of a recording statute which only applies to instruments affecting title to real estate). This is true whether the action is brought in the courts of our state, the courts of a sister state, or the federal courts. If brought in the latter two, our state courts will afford the judgment full faith and credit. U.S. Const. art. IV, § 1; *see Andre*, 680 P.2d at 1363 (granting full faith and credit to a California judgment imposing a constructive trust on real property located in Idaho and affirming Idaho trial court order transferring title to property in accordance therewith).

### III. CONCLUSION

Petitioners brought an action in the Federal District Court for the District of Minnesota seeking to impose a constructive trust on Colorado real property. One of the purposes of this action was to "retitle" the various Colorado ranch facilities in Petitioners' names. Under these circumstances, Petitioners were entitled to file a notice of lis pendens against the Colorado real estate pursuant to section 38–35–110. Accordingly, we make the rule absolute, and the district court is directed to vacate its order dismissing the notices of lis pendens filed against the Dilo Parcel.